## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

ANNIE BORDEN
4988 Hawaiian Terrace
Cincinnati, OH 45223

         *Plaintiff,*

v.

ANTONELLI COLLEGE
c/o Mary A. Davis, President
124 E. 7th Street
Cincinnati, OH 45202

**Serve Also Statutory Agent**:
c/o Mary A. Davis
President of Antonelli College
Technology Training Systems, Inc.
32100 Solon Road Suite 204
Solon, OH 44139

and

TECHNOLOGY TRAINING
SYSTEMS, INC.
c/o Mary A. Davis
President of Antonelli College
32100 Solon Road Suite 204
Solon, OH 44139

**Serve Also Statutory Agent**:
c/o Mary A. Davis
President of Antonelli College
Highland Park Service Corp.
28601 Chagrin Blvd Suite 500
Cleveland, OH 44122

and

:
:
:   **CASE NO. A1602019**
:
:   **Judge Leslie Ghiz**
:
:
:   **FIRST AMENDED CLASS ACTION**
:   **COMPLAINT FOR DAMAGES**
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

JOHN DOES 1-5                              :
MEMBERS OF THE BOARD OF                    :
TRUSTEES                                   :
TECHNOLOGY TRAINING SYSTEMS,               :
INC. d/b/a ANTONELLI COLLEGE               :
124 E. 7th Street                          :
Cincinnati, OH  45202                      :
                                           :
and                                        :
                                           :
MARY ANN DAVIS, INDIVIDUALLY               :
AND AS PRESIDENT                           :
TECHNOLOGY TRAINING SYSTEMS,               :
INC. d/b/a ANTONELLI COLLEGE               :
124 E. 7th Street                          :
Cincinnati, OH  45202                      :
                                           :
and                                        :
                                           :
TERRY G. SCHIEMAN,                         :
INDIVIDUALLY AND AS VICE                   :
PRESIDENT OF  TRAINING                     :
SYSTEMS, INC. d/b/a ANTONELLI              :
COLLEGE                                    :
124 E. 7th Street                          :
Cincinnati, OH  45202                      :
                                           :
and                                        :
                                           :
KEVIN P. KEEHAN, INDIVIDUALLY              :
AND AS DIRECTOR OF EDUCATION               :
AND ENROLLMENT                             :
TECHNOLOGY TRAINING SYSTEMS,               :
INC. d/b/a ANTONELLI COLLEGE               :
124 E. 7th Street                          :
Cincinnati, OH  45202                      :
                                           :
and                                        :
                                           :
COREY BJARNSON, INDIVIDUALLY               :
AND AS DEAN OF STUDENTS                    :
TECHNOLOGY TRAINING SYSTEMS,               :
INC. d/b/a ANTONELLI COLLEGE               :
124 E. 7th Street                          :
Cincinnati, OH  45202                      :
and                                        :

2

MARRE BARNETTE, R.N.       :
PROGRAM ADMINISTRATOR OF    :
PRACTICAL NURSING PROGRAM    :
TECHNOLOGY TRAINING SYSTEMS,  :
INC. d/b/a ANTONELLI COLLEGE    :
7 Vermont Avenue                  :
Cincinnati, OH 45215          :
                             :
            *Defendants.*     :
                             :

## INTRODUCTION

1.     Plaintiff Annie Borden is a student in the Practical Nursing diploma program at Antonelli College, a career training school with its main campus in downtown Cincinnati. The Practical Nurse Program ("Nurse Program") is advertised as a twelve (12) to fourteen (14) month program that prepares students to sit for the National Council Licensure Examination for Practical Nurses ("NCLEX-PN") given by the State of Ohio for licensure as a licensed practical nurse ("LPN"). Like other Class Members, Ms. Borden holds a job to support herself and her family and, through Antonelli College, has applied for and received grants and loans to cover the costs of this program. She also was required to borrow funds from Antonelli College. Plaintiff was on track to graduate in August 2016 and sit for the NCLEX-PN one week later. Other Class Members were scheduled to graduate in May 2016, December 2016 and March 2017, as well as with her in August 2016. Then, on March 17, 2016, the Ohio Board of Nursing ("OBN") suspended Antonelli College's Practical Nursing Program at its Cincinnati campus, and required Antonelli College to immediately terminate classes in this program. Plaintiff and Class Members cannot complete their courses; they cannot graduate; they cannot take the NCLEX-PN; and they cannot become practical nurses.

3

## PARTIES

2.     Plaintiff Annie Borden is a resident of Hamilton County, Ohio and enrolled in the Nurse Program at Antonelli College in May 2014.  She was scheduled to graduate in August 2016. Plaintiff has two children for whom she must arrange childcare and school transportation in order to attend the Nurse Program.

3.     Defendant Antonelli College is a private, for-profit college that has operated at its main campus in Cincinnati, Ohio for over thirty years, with branches in West Chester, Ohio, Jackson, Mississippi, and Hattisburg, Mississippi.  Antonelli College offers training for employment in various industries, including the healthcare profession.  Antonelli College is a trade name registered with the State of Ohio by Technology Training Systems, Inc. to "own and operate a private college granting degrees in trades and vocations."

4.     Defendant Technology Training Systems, Inc. is an Ohio corporation for profit which owns the trade name "Antonelli" and owns and operates the school in Cincinnati that is the subject of this action.

5.     John Does 1–5 are members of the Board of Trustees of Antonelli College and/or Technology Training Systems, Inc.  John Does 1-5 bear ultimate responsibility for oversight of all Antonelli College programs, including the Nurse Program.

6.     Defendant Mary A. Davis, a resident of Solon, Ohio, is sole owner of Defendant Antonelli College and sole owner of Defendant Technology Training Systems, Inc.  She is also President of Antonelli College.

7.     Defendant Terry G. Schieman is Vice President of Technology Training Systems, Inc. d/b/a Antonelli College, and is a resident and citizen of Cleveland, Ohio.  He bears responsibility for oversight of Antonelli College programs, including the Nurse Program.

4

8.     Defendant Kevin P. Keeham is Director of Education and Director of Enrollment at Antonelli College, and shares oversight responsibilities for the Nurse Program.

9.     Defendant Corey Bjarnson is the Dean of Students of Antonelli College.   He bears responsibility for oversight of Antonelli College programs, including the Nurse Program.

10.    Marre Barnette is a resident of Hamilton County and was Program Administrator of the Nurse Program until her abrupt resignation on March 30, 2016 after the OBN shut down the Nurse Program.

## JURISDICTION AND VENUE

11.    Jurisdiction is appropriate under the Ohio Constitution, Article IV §4, which provides that the Court of Common Pleas shall have original, general jurisdiction over all justiciable matters, civil, criminal, and probate. The damages that Plaintiff and the Class claim exceed the minimum jurisdictional amount of this Court, as set forth in R.C. §2305.01.

12.    Venue is proper in Hamilton County pursuant to Ohio R. Civ. P. 3(B)(3) and Ohio R. Civ. P. 3(B)(6). Defendants' conduct within Hamilton County gave rise to the claims for relief herein and Hamilton County is where all or part of the claims for relief arose.

## NATURE OF ACTION

13.    Plaintiff alleges that Defendants engaged in deceptive and misleading practices in the marketing and advertising of Antonelli's Practical Nurse Program.  Plaintiff was led to believe that if she enrolled in the Practical Nurse Program, upon graduation, she would: (i) receive a practical nurse diploma from a program certified by the OBN; (ii) be prepared to take the NCLEX-PN exam that she needed to pass to become a LPN; and (iii) find employment as a LPN. The same representations were made to all prospective and entered students of the Antonelli College Practical Nurse Program.

5

14.     Prospective and entered students enrolled in the Practical Nurse Program were never told that: (i) the Nurse Program had only received conditional approval by the OBN; (ii) the Nurse Program had been required by OBN to enter into a Consent Agreement; (iii) that as of November 2015, the future of the Nurse Program was in jeopardy; and (iv) that as of January 4, 2016, OBN informed the Nurse Program that because it had not timely received Antonelli's Request for a Hearing, it would issue an Adjudication Order regarding the Nurse Program's approval status without holding any hearing.

15.     As a result, instead of being prepared for a new career and a higher earning capacity, Plaintiff and Class Members were saddled with large student loan debt, no diploma, insufficient instruction, and limited or no ability to satisfy the debt they had incurred.

16.     In marketing its Practical Nurse Program, Antonelli College made numerous representations to potential students about the School and the Nurse Program. Among the misstatements, Defendants represented that "Antonelli College provides quality, focused education" which "allows students to practice and succeed in their field of study." This was not the case with the Nurse Program.

17.     Antonelli College charges each student in its Practical Nurse Program tens of thousands of dollars to earn a degree. It promotes federal financial aid in the form of student loans from the federal government to the students it targets, and lends money to students at excessive interest rates. Antonelli College plays a significant role in the financial aid process by counseling students on available financial aid and assisting students in the completion of the necessary paperwork to apply for federal financial aid. It also arranges for Antonelli College to periodically draw down each student's financial aid for tuition payments.

6

18.     After taking out loans to pay Antonelli thousands of dollars in tuition, holding jobs to support themselves and their families, and giving up time with their families to prepare for and attend classes, Plaintiff and Class Members are saddled with thousands of dollars of debt and have nothing to show for their efforts and sacrifice.

19.     In many instances, Antonelli College directed its students toward Title IV government loans that allowed borrowing for room and board despite the fact that Antonelli College did not provide those services to students. Antonelli College pressured students to allow Antonelli to collect these funds and apply them toward tuition rather than allowing students to use these funds for the purposes intended and set out on the loan application. These students are now in debt to pay back large sums of money that Antonelli collected on their behalf and did not distribute to them or use for the designated purpose and retained.

20.     Students in the Nursing Program were pressured by Antonnelli College administrators to take out loans from Antonnelli College to partially fund their education. This typically occurred as students completed their financial aid paperwork with the assistance of Antonelli College staff members in the financial aid office. When doing so, students were informed that the loans that they signed up for were insufficient to cover their entire tuition and other costs and that the student must therefore take out a loan from Antonnelli College ("Antonnelli Loan") to enroll at the school.

21.     The Antonnelli Loan is for approximately $800. Students are required to make payments on the Antonelli Loan each semester and cannot take exams or receive a diploma until the Antonelli Loan is fully repaid. Payments are typically $100.00 in excess of the amount due under the loan. Then, if the students achieve perfect attendance for the semester, the extra

7

amount is later refunded to them. By information and belief, the Antonnelli Loan has an interest rate of 8% or higher.

22.    Sometimes, Antonelli forced nursing students to take courses outside of the Nurse Curriculum when nursing courses were not available. Nursing students ended up taking courses in art history or mathematics to receive a sufficient number of credits to graduate.

### THE PRACTICAL NURSE PROGRAM AT ANTONELLI COLLEGE

23.    The OBN is responsible for defining the minimum standards for practical nurse programs in Ohio. R.C.4723.06(A)(4). In order to receive conditional approval to operate in Ohio, practical nurse programs must meet and maintain these minimum standards. R.C.4723.07. A nurse program must receive conditional approval from the OBN before it can operate and accept students.

24.    Effective November 15, 2012, the OBN granted Antonelli College conditional approval to operate its Practical Nurse Program in Ohio. On January 24, 2013, at the request of Antonelli College, the OBN postponed the implementation date for the Practical Nurse Program until May 13, 2013. On May 16, 2013, again at the request of Antonelli, the OBN postponed the implementation date to September 2013, when the Nurse Program finally opened with conditional approval.

25.    The average cost of the Nurse Program, including tuition and fees, is approximately $25,000 per year per student. Through advertising, promotional brochures, program descriptions, written contracts and direct person-to-person communications from its agents and employees, Antonelli College represented to Plaintiff and Class Members that students in the Nurse Program would be able to complete it within just 12 months - a decidedly shorter amount of time than other similar licensed practical nursing programs – and thereafter sit for the

8

NCLEX-PN exam to become licensed, practical nurses in Ohio. Antonelli College further represented that students in the Nurse Program would learn how to:

   a. Utilize knowledge of physical, biological, and behavioral sciences in the application of safe holistic nursing care for culturally diverse patients with healthcare issues across the lifespan.

   b. Implement nursing interventions that are safe, competent andf culturally sensitive to patients, families, and communities in diverse settings across the lifespan.

   c. Apply for licensure as a Practical Nurse in Ohio and sit for the NCLEX-PN exam.

26.     Through its website, Antonelli advertised the Nurse Program as "highly selective" and as an "exceptional program" for individuals who wished to become licensed practical nurses.

27.     As part of its Mission Statement contained in the Practical Nursing Program Student Handbook 2014-2015 ("Student Handbook"), Antonelli represents that "Antonelli College's mission is to empower individuals by providing quality, focused education, and the development of life-changing skills."

28.     The Student Handbook describes the Nursing Program as follows:

> Antonelli College's Practical Nursing Program is offered by the Department of Nursing. The Program prepares knowledgeable nursing graduates by providing a caring, diverse, and student-centered learning environment that nurtures critical thinking and enriches holistic healthcare across the lifespan. All activities of the nursing program are guided by the college's mission, as reflected in the specific goals, purposes and philosophy of the nursing program.

### *TROUBLE IN THE NURSING PROGRAM*

29.     The OBN conducted its first site visit of the Nurse Program on July 15, 2014 and issued a Survey Visit Report ("SVR").

30.     The SVR, dated July 30, 2014, outlined numerous deficiencies and found that Antonelli College failed to meet the OBN's minimum requirements for final approval.

9

31.    The SVR determined that Antonelli College "did not demonstrate that it was maintaining resources, including but not limited to, classroom and skills laboratory equipment and supplies necessary for students to successfully complete the program." The SVR also stated: "specifically, during the site, Antonelli did not demonstrate that it maintained supplies necessary for its students to practice and verify their intravenous therapy skills as required to meet Antonelli's stated course outcomes for PN2304."

32.    The OBN then conducted an unscheduled inspection on November 21, 2014 and found numerous standards violations, including violations related to record-keeping, transferring credits, progressing students and the clinical teaching methods. Additionally, the OBN found that Antonelli College utilized Christ Hospital as a clinical site without even having in place a written executed affiliation agreement with the hospital.

33.    These violations resulted in the OBN placing Antonelli on probation and requiring Antonelli to agree to a number of terms and conditions, memorialized in a Consent Agreement between Antonelli College Practical Nurse Program and the OBN ("Consent Agreement"), dated November 21, 2014, attached as Exhibit A. Defendant Marre Barnette, the Program Administrator, signed the Consent Agreement on behalf of Antonelli.

34.    Defendants did not inform enrolled and prospective students (1) that the Nurse Program was only conditionally approved by the OBN; (2) that Antonelli College had been forced to enter into the Consent Agreement because it failed to meet minimum standards; and (3) that students would not be able to complete the Nurse Program and receive their degrees unless Antonelli fulfilled its obligations under the Consent Agreement.

35.    The Consent Agreement also included a timetable for notification. In relevant part, the Consent Agreement stated: "By December 19, 2014, Antonelli shall provide written notification

10

to all students that a copy of this Consent Agreement is available upon request. Such notification shall be displayed in a prominent manner in a common area, such as a student bulletin board. Upon request from a student, Antonelli shall submit documentation to the Board explaining how it provided notification to all students and attesting that, when requested, Antonnelli has provided a copy of this Consent Agreement to the student. Further, by January 19, 2015, Antonelli shall submit documentation to the Board explaining how it provided written notification to all students and attesting that, when requested, Antonelli has provided a copy of this Consent Agreement."

36.     The Consent Agreement also bound Antonelli to a continuing duty to provide written notification to all new students that a copy of the Consent Agreement was available upon request; and a continued duty to OBN not to submit any false, misleading or deceptive statements, information or documentation to the OBN, Antonelli's students, applicants for admission, or others with whom it contracts related to the Nurse Program.

37.     Despite agreeing to the terms of the Consent Agreement and receiving a copy of it, Antonelli College never displayed it in a prominent manner or provided written notification to students of the Consent Agreement. Nor did Antonelli College provide Plaintiff and other Class Members with a copy of the Consent Agreement. Antonelli later claimed it was "unaware" of the Consent Agreement, which was signed by the School's Director of the Nursing Program.

38.     On May 6-7, 2015, the OBN conducted an announced survey visit to review whether Antonelli was complying with the Consent Agreement. The OBN found that Antonelli was not in compliance.

39.     On August 5-6, 2015, the OBN conducted another announced survey visit and issued its Survey Report in September 2015. The Board found that while some of the requirements of the

11

Consent Agreement were met, Antonelli had no documentation to demonstrate the Program's ability to implement portions of its curriculum related to medical practices for current students anticipated to complete the program that Fall.

40.     On November 19-20, 2015, the OBN met and determined that Antonelli was still in violation of numerous standards set forth under R.C.4723.07 and still failed to meet the requirements set forth in the November 2014 Consent Agreement. The OBN determined that it would deny Antonelli the right to operate the Nurse Program.

41.     Antonelli had the right to a hearing on the matter if it submitted a written request for such a hearing to the OBN within thirty (30) days of the mailing of the Notice for Opportunity for Hearing, attached as Exhibit B.

42.     OBN never received a timely request for a hearing.

43.     The bottom line was that despite OBN giving Antonelli ample time and opportunity to correct its multiple and ongoing violations of Ohio law and regulations discovered during announced inspections, Antonelli College failed to make the necessary corrections and was not operating a Nurse Program that met minimum standards.

## *PLAINTIFF ANNIE BORDEN AND CLASS MEMBERS WERE INJURED BY DEFENDANTS' CONDUCT*

44.     Ms. Borden originally read about the Practical Nurse Program in an online advertisement prepared by or for Antonelli College. Ms. Borden was researching nursing programs online and was interested in Antonelli because it offered a 12-14 month program.

45.     Antonelli College then contacted Ms. Borden by telephone and encouraged her to enroll in the Practical Nurse Program. During this call, she asked and was advised that their Practical Nurse Program was approved by the State of Ohio.

12

46.     On or about May 7, 2014, Ms. Borden registered for the Program. With the assistance of Antonelli, she applied for and received federal financial aid to pay her tuition.

47.     The tuition for the Practical Nursing Program for two semesters was $15,270, with additional expenses for course books, materials and nursing scrubs. Ms. Borden made weekly payments of $50.00 to Antonelli toward the balance of the cost of the Practical Nurse Program. Neither Ms. Borden nor Class Members ever received the scrubs that they paid for and received course books that were sometimes fifteen years old.

48.     Ms. Borden began classes at Antonelli's Practical Nurse Program on or about May 15, 2014. Defendant Davis was in attendance on the first day of class to greet the incoming students. During Ms. Davis' presentation to the new students, she informed the students in attendance that she was the owner of Antonelli, that she was proud of the Cincinnati school which she thought of as "her baby."

49.     In January 2016, Ms. Borden learned that a recent graduate of the Nurse Program was having difficulty receiving approval to sit for the NCLEX-PN exam. The recent graduate's sister was also enrolled in the Nurse Program. She informed Plaintiff Borden and other students of the trouble her sister was having. Ms. Borden and Class Members questioned Defendant Barnette and other administrators. Defendant Barnette and other Antonelli administrators assured Ms. Borden and Class Members that there were "no problems regarding accreditation" and everything was "OK" – despite the fact that Defendant Barnette knew that Antonelli had failed to timely request a hearing and knew that the OBN would be issuing an Adjudication Order.

50.     Defendants never disclosed that the Antonelli's Nurse Program was in jeopardy of losing its accreditation or provided new students with copies of the Consent Agreement, as they were so obliged by its terms. Nor did they notify Ms. Borden and Class Members that OBN

13

recommended that the Program be suspended; that Antonelli failed to timely request a hearing; and that OBN notified Antonelli that it would issue an Adjudication Order.

51.     On March 17, 2016, the OBN revoked Antonelli's conditional approval status and stripped the Nursing Program of its accreditation because Antonelli had failed to rectify the numerous violations listed in the Consent Agreement.   The Board ordered Antonelli to immediately suspend its Nurse Program. See attached Exhibit C.

52.     Even with full knowledge that its accreditation was in dire jeopardy due to its actions and omissions, Antonelli continued to siphon funds from students enrolled in the Nurse Program.  On March 17, 2016 – the same day that its accreditation was revoked – Antonelli's Office of Financial Aid notified Ms. Borden that Antonelli College had drawn down a total amount of $4,700.00 of her loan to cover her forthcoming tuition debt.   Like other Class Members in the Program, Ms. Borden has accumulated thousands of dollars of debt and received none of the benefits promised by Antonelli College, including a diploma from a certified program and the right to sit for the NCLEX-PN exam – or even the nursing scrubs for which they paid.

53.     On or about March 30, 2016, Antonelli College announced that it was suspending its Program.   Consequently, Ms. Borden and Class Members were unable to attend their classes, perform their clinical work, graduate, take their licensure exams, and become licensed practical nurses.

54.     Due to Defendants' conduct, acts, and omissions, Ms. Borden and Class Members have suffered damages including, but not limited to, the following: (1) loss of the expected degree qualifying them to sit for the NCLEX-PN; (2) loss of one year or more of time and dedication to the Nurse Program; (3) loss of tuition, fees, interest on loans, and supplemental expenses to

14

attend the Nurse Program; (4) loss of costs to commute, park, and/or childcare; (5) loss of future earnings; and (6) loss of earnings due to their participation in the Nurse Program.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

56.     Plaintiff brings this action pursuant to Ohio Rules of Civil Procedure 23 (A) and (B), on behalf of herself and all persons similarly situated who are victims of Defendants' misleading and deceptive practices relating to the Practical Nurse Program.

57.     Plaintiff seeks to represent the following class:

> **All persons who entered the Nursing Program at Antonelli College from September 2013 to the present and suffered damages.**

58.     The Class definition is clear and succinct, Class Members are easily identifiable from Antonelli's own records, and Plaintiff is a member of the Class.

59.     Plaintiff and Class Members are all customers that are the same with respect to the allegations contained in this Complaint.

60.     The requirements of Rule 23(A) are met in that the members of this Class are definite and ascertainable, but so numerous that joinder of all members is impracticable.  There are currently approximately 52 students enrolled in the Nurse Program and between 52 and 100 potential class members, thereby satisfying the numerosity requirement of Civ.R. 23(A)(1).

61.     There are questions of law and fact presented in this case that are common to Plaintiff and members of this Class, which predominate over any questions which could affect individual Class Members.

62.     Jurisdiction is properly lodged with this Court.

15

63.     The claims of the named Plaintiff, as a representative of the Class, are typical and identical to the claims of the Class as a whole.  Plaintiff Borden has been subjected to Defendants' representations and practices, and has suffered the same type of deprivations that all Antonelli College nursing students have suffered as a result of Defendants' fraudulent and deceptive scheme and course of conduct, namely, enrollment based on promises of a diploma from an accredited Nurse Program, payment of tuition for such a diploma, denial of the ability to complete classes, loss of accreditation, and the inability to sit for the NCLEX-PN exam and become a Licensed Practical Nurse.

64.     Plaintiff is not aware of any claims or defenses which are or could be adverse or antagonistic to the claims and interest of the other members of the Class.  Thus, Plaintiff satisfies the typicality requirement.

65.     Plaintiff Borden will fairly and adequately represent the interests of the Class.  She has common interests with unnamed members of the Class in seeking remedies to address the failures of Defendants to maintain the school's accreditation and continuation of its Nurse Program.

66.     Plaintiff is committed to aggressively protect the claims and interest of other members of the Class, to seek out and obtain all possible recovery for the mutual and shared benefit of all members of the Class, and to utilize the Class Action device to promote and enhance the rights and claims of the victims of the common scheme and course of deceptive, fraudulent, and misleading conduct perpetrated by Defendants.  Plaintiff's interests are aligned with, and not antagonistic to, those of the Class.  Plaintiff has retained counsel who are highly competent and experienced in the prosecution of complex and/or class litigation and who will fairly and

16

adequately protect the claims and interest of the Class. Therefore, Plaintiff and her counsel satisfy the "adequate representation" requirement of Civ.R. 23(A)(4).

67. Adjudication with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members, not parties to the adjudication per Civ.R. 23(B)(1), and questions of law or fact common to the members of the class predominate over any questions affecting only individual members per Civ.R. 23 (B)(3).

## CAUSES OF ACTION

### COUNT I
### Violation of Deceptive Trade Practices Act
### R.C. §4165.01, *et seq*

68. Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

69. Defendants made deceptive, false and misleading statements concerning the Nurse Program as alleged herein. Defendants' misrepresentations and omissions of material fact include, but are not limited to, failing to advise enrollees in the Nurse Program that the Nurse Program was never fully accredited, that Antonelli College was forced to enter into a Consent Agreement to keep the Nurse Program open, and that the State of Ohio would revoke its approval for the Nurse Program unless certain deficiencies were corrected.

70. Defendants' deceptive, false, and misleading statements deceived Plaintiff and Class Members.

71. Defendants' deception is material as it influenced the decision of Plaintiff and Class Members to pay for and enroll in the Nurse Program at Antonelli and to continue in the Program.

72. Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' deception.

17

73. Defendants have violated the Ohio Deceptive Trade Practices Act, R.C. sec 4165.01, *et seq.*

74. Plaintiff and Class Members are entitled to recover compensatory damages, plus attorneys' fees and costs.

75. Defendants' conduct was intentional, willfull, wanton, malicious, and egregious, entitling Plaintiff and members of the Class to punitive damages and attorneys' fees in an amount to be determined at trial.

76. Defendants continue to engage in these deceptive and misleading acts and practices and Plaintiff and Class members continue to be damaged by Defendants' conduct. Accordingly, Plaintiff and members of the Class are also entitled to injunctive relief to prohibit Defendants from continuing to perpetrate their deceptive scheme.

**COUNT II**
**BREACH OF CONTRACT**

77. Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

78. The Student Handbook and the Antonelli College Loan Program constitute legally binding agreements between Antonelli College and Plaintiff and other members of the Class.

79. Defendants failed to adhere to the Mission Statement contained in the Student Handbook in order to prepare Plaintiff and other members of the Class for the testing associated with obtaining licensure as a Licensed Practical Nurse.

80. Defendants failed to fulfill their duties and obligations owed to Plaintiff and other members of the Class as part of their enrollment in the Antonelli College Loan Program. Antonelli agreed to provide Plaintiff and the Class with a fully accredited Nurse Program

18

diploma and agreed that, upon completion, Plaintiff and the Class would be eligible for the NCLEX-PN certification exam, which is required for licensure.

81.     As a result of Antonelli's breach, by and through its owners, directors, officers, employees and educators, as set forth herein, Plaintiff Borden has suffered and continues to suffer damages including, but not limited to, monetary loss, loss of income, loss of employment opportunities, loss of educational opportunities, significant debt, emotional pain and interference with family relationships.

## COUNT III
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

82.     Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

83.     Defendants had a duty to act in good faith in the performance of the contract between it and Plaintiff.

84.     By failing to do so, by making false representations and omitting material facts, Defendants breached the duty of good faith and fair dealing.

85.     As a result of the conduct set forth above, Plaintiff and Class Members have suffered and will continue to suffer monetary loss, loss of income, loss of employment opportunities, loss of educational opportunities, significant debt, emotional pain and interference with family relationships.

## COUNT IV
## FRAUD

86.     Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

ELECTRONICALLY FILED 04/21/2016 15:33 / ACOM / A 1602019 / CONFIRMATION NUMBER 492299

87. Defendants represented to Plaintiff:

   a. That Plaintiff attended a Nursing Program which was fully accredited by the State of Ohio.

   b. That Antonelli College was following and complying with Board of Nursing standards in its teaching curriculum and practice.

   c. That Plaintiff would graduate and receive a diploma from an accredited Nurse Program upon completion of all standard requirements, and would have the opportunity to complete those requirements.

   d. That Plaintiff would be eligible to sit for the NCLEX-PN exam upon graduation.

   e. That Plaintiff would be eligible for licensed practical nursing jobs in both the public and private sector upon graduation and licensure.

88. Defendants intentionally concealed from Plaintiff that Antonelli's accreditation was provisional and in jeopardy. Defendants specifically informed Plaintiff on more than one occasion that everything was "OK" and that there were no problems with accreditation.

89. Based upon these representations and concealment of material facts, Plaintiff enrolled in and continued her enrollment in the LPN program. Plaintiff paid tuition, expenses and fees, and lost opportunities to transfer to an accredited program.

90. Representations and omissions of Defendants were false and concealed material facts.

91. These representations and omissions were made intentionally and knowingly, with the intent to mislead Plaintiff and Class Members and prevent them from transferring in order to assure that Plaintiff and Class Members continued to pay tuition, fees and expenses to Antonelli College.

92. Even after the State of Ohio informed Antonelli that its request for a hearing was not timely filed - on January 4, 2016 - Antonelli continued to conceal from Plaintiff and Class Members that its accreditation about to be revoked.

20

93.     Plaintiff and Class Members relied upon Antonelli's statements and omissions of material fact and suffered damages as a result of that reliance. Plaintiff and Class Members invested time and money in the LPN program, incurred loan obligations, lost the opportunity to transfer to an accredited program and graduate, and lost the opportunity to take the NCLEX-PN exam and be licensed as a LPN.

94.     Plaintiff and Class Members have suffered and continued to suffer damages, including but not limited to, monetary loss, loss of income, loss of employment opportunities, loss of educational opportunities, significant debt, emotional pain and interference with family relationships.

## COUNT V
## CONSTRUCTIVE FRAUD

95.     Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

96.     Defendants represented to Plaintiff and Class Members the following:

  a. That Plaintiff and Class Members were attending a Nursing Program which was fully accredited by the State of Ohio;

  b. That Antonelli College was following and complying with Board of Nursing standards in its teach curriculum, equipment, student interaction, and training opportunities;

  c. That Plaintiff and Class Members would receive a diploma from an accredited institution;

  d. That Plaintiff and Class Members would be eligible to sit to the NCLEX-PN exam upon graduation;

  e. That Plaintiff and Class Members would be eligible for nursing jobs in both the public and private sectors upon graduation and passing of the NCLEX-PN exam; and

  f. That the Ohio Board of Nursing accreditation was not in jeopardy.

21

97.     Once Plaintiff and Class Members became aware of the loss of accreditation, Defendants concealed the severity of the matter from Plaintiff and Class Members, initially telling them that it was appealing the loss of accreditation when it had not timely filed its Notice of Appeal, that it was seeking to transfer students to other schools and/or set up a certified program on campus so that students might graduate and sit for the NCLEX-PN exam. Defendants did not indicate that any transfer would mean additional tuition payments; that the loss of accreditation would prevent students from transferring credits and receiving a diploma; and that without a diploma from an accredited program, Plaintiff and Class Members could not take the NCLEX-PN exam.

98.     Based upon these representations and concealment of material facts, Plaintiff enrolled and continued her enrollment in the LPN Program at Antonelli College. Antonelli continued to draw down loans funds for tuition -- even on the date its Nurse Program was suspended -- demanding expenses and fees, forcing Plaintiff to incur additional student loan obligations and further losing opportunities to transfer to an accredited program. Plaintiff was forced to pay Antonelli tuition when its Nurse Program was suspended and there were no classes.

99.     Defendants knew that they had entered a Consent Agreement and that their accreditation was in jeopardy. Despite this knowledge, Defendants continued to reassure Plaintiff and Class Members that everything was "OK."

100.    Antonelli's representations and omissions were false and concerned material facts.

101.    These representations and omissions were made knowingly and with an intent to deceive Plaintiff and Class Members. And, Defendants' statements deceived Plaintiff and Class Members.

102.    Plaintiff relied upon Defendants' statements and omissions of material facts and has suffered damages as a result of that reliance. Plaintiff has invested time and money in the Nurse

22

Program in order to graduate on time, and will incur additional tuition, fees and expenses if required to complete her LPN education at another institution in order to receive a diploma from a fully accredited LPN Program.

103.    Defendants breached their legal and equitable duty to Plaintiff by keeping this information regarding the likelihood of loss of accreditation from Plaintiff and by insisting that Plaintiff would not be harmed in her educational or career pursuits by remaining at Antonelli College in its Nurse Program.

104.    As a result of the acts of Defendants as set forth above, Plaintiff has suffered and will continue to suffer monetary loss, loss of income, loss of employment opportunities, loss of educational opportunities, loss of opportunities for career advancement, significant debt, emotional pain, and interference with family relationships.

**COUNT VI**
**INTENTIONAL MISREPRESENTATION**

105.    Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

106.    Defendants repeatedly misrepresented to Plaintiff the status of its program and its ability to provide the services it promised as part of its Nurse Program.

107.    Defendants' misrepresentations were made intentionally, fraudulently and with reckless disregard for their truth or falsity. Defendants deliberately misled Plaintiff to induce her to enroll in, and/or continue enrollment in, its Nurse Program and to continue to pay tuition.

108.    Defendants' intentional misrepresentations were material representations upon which Plaintiff reasonably relied in enrolling and continuing her enrollment in its program, assuming student loans, and incurring other out-of-pocket expenses.

23

109.    As a result of the intentional misrepresentations of Defendants as set forth above, Plaintiff has suffered and will continue to suffer monetary loss, loss of income, loss of employment opportunities, loss of educational opportunities, loss of opportunities for career advancement, significant debt, emotional pain and interference with family relationship.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

110.    Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

111.    Defendants had a duty to provide accurate information to Plaintiff regarding the status of its Nurse Program when it solicited Plaintiff to enroll, and continue her enrollment in its program.

112.    Defendants negligently and falsely represented information related to the Nurse Program to Plaintiff and Members of the Class. Defendants' misrepresentations were made in the course of its business and with respect to transactions in which they had a pecuniary interest, and Defendants supplied this false information to Plaintiff and members of the Class in order to influence them to enroll in the Nurse Program. Defendants engaged in common and uniform misrepresentations to Plaintiff and Class Members.

113.    Defendants had a duty to exercise reasonable care to make accurate representations and promises to Plaintiff and Class Members about the Nurse Program and its probationary status.

114.    Defendants breached their duty of care by, among other things: (i) failing to disclose that the Nurse Program only had received conditional approval from the OBN: (ii) failing to disclose that it had entered into a Consent Agreement under which the Nurse Program would lose accreditation from the OBN absent the fulfillment of certain contingencies; and (iii) failing to

24

disclose that the Nurse Program lost its conditional certification; and failing to disclose that Antonelli failed to timely appeal the loss of certification.

115.    Plaintiff and Class Members reasonably and justifiably relied upon Defendants' false and negligent representations, and suffered damages as a direct and proximate result of their omissions.

116.    Defendants failed to exercise ordinary care and failed to act in accordance with the ordinary standard of care in making representations to the Plaintiff and omitting material facts to Plaintiff.

117.    As a result of the negligent misrepresentations of Defendants as set forth above, Plaintiff has suffered and continues to suffer monetary loss, loss of income, loss of employment opportunities, loss of educational opportunities, loss of opportunities for career advancement, significant debt, emotional pain and interference with family relationship.

## COUNT VIII
## UNJUST ENRICHMENT

118.    Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

119.    As described above, Plaintiff and Class Members conferred a benefit on Defendants – namely, tuition and other payments.

120.    Defendants had knowledge of the benefit. Defendants' retention of the benefit conferred upon them, under the circumstances described in this Complaint, would be unjust.

121.    Defendants were unjustly enriched by retaining the benefit of Plaintiff and Class Members payments without providing them with the nursing education in an accredited Nurse Program.

## COUNT IX
## PUNITIVE DAMAGES

122.    Plaintiff realleges the foregoing paragraphs of this Class Action Complaint and incorporates them by reference as if fully rewritten here.

123.    The actions of Defendants were reckless, willful, wanton, grossly negligent and in total disregard for the rights of Plaintiff and Class Members.

124.    The wrongful conduct of Defendants as aforesaid is sufficiently reprehensible to warrant the imposition of punitive damages in an amount sufficient to deter or prevent similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

   A.   That this action be certified as a Class Action under Rule 23 of the Ohio Rules of Civil Procedure;

   B.   Compensatory damages for Plaintiff and Class Members in an amount to be determined at trial;

   C.   Awarding Plaintiff and Class Members damages for emotional distress and interference with family relationships;

   D.   Awarding Plaintiff and Class Members reasonable costs and expenses of this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements;

   E.   Declaratory and injunctive relief enjoining Defendants from engaging in unfair, deceptive and misleading acts and practices related to the PNP and Consent Decree; and

   F.   Awarding Plaintiff and Class Members such other and further relief as may be just under the circumstances.

ELECTRONICALLY FILED 04/21/2016 15:33  /  ACOM  /  A 1602019  /  CONFIRMATION NUMBER 492299

DATED:  April 21, 2016

Respectfully submitted,


**/s/ Phyllis E. Brown**
Phyllis E. Brown (0037334)
Adam S Brown  (0078803)
Cummins & Brown LLC
312 Walnut Street, Suite 1000
Cincinnati, OH  45202
513-241-6400
pbrown@cumminsbrownlaw.com
abrown@cumminsbrownlaw.com


## JURY DEMAND

Plaintiff demands a trial by jury of all issue so triable.