**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANNIE BORDEN, *et al.*, | : | Case No. 1:16-cv-519 |
| Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| ANTONELLI COLLEGE, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART**
**AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**ON THE CLAIMS OF PLAINTIFF ANNIE BORDEN AND**
**DEFENDANT ANTONELLI'S COUNTERCLAIM (Doc. 50)**

This civil case is before the Court on Defendants' motion for summary judgment

on the claims of Plaintiff Annie Borden (Doc. 50) and the parties' responsive memoranda

(Docs. 56, 61).[1]

# I. BACKGROUND

## A. Introduction.

Plaintiffs Annie Borden and Kachena Richardson commenced this lawsuit, which

alleges that Defendants engaged in deceptive and misleading marketing and advertising

practices. Plaintiffs are former students in Antonelli's Practical Nursing Program

("PNP"). Plaintiffs' claims, which are asserted on behalf of themselves and a putative

class, are premised on their contentions that Defendants misrepresented facts about the

PNP, including its quality and approval from the Ohio Board of Nursing ("OBN"), and

---

[1] "Defendants" are Technology Training Systems, Inc. d/b/a Antonelli College ("Antonelli"),
Mary Ann Davis, Corey Bjarnson, Leah Elkins, and Marre Barnette.

failed to provide adequate instruction.

On these bases, the Complaint asserts claims for violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), breach of contract, fraud, constructive fraud, intentional misrepresentation, negligent misrepresentation, promissory estoppel and unjust enrichment. (Doc. 30).

In response, Antonelli filed a Counterclaim against Ms. Borden. (Doc. 47). The Counterclaim asserts that Ms. Borden is liable for $6,815.50 in unpaid tuition and asserts claims for breach of contract and unjust enrichment.

**B. Facts pertaining to Ms. Borden's claims.**

    1. <u>Antonelli opens the PNP; encounters issues with its approval from the OBN</u>.

In September, 2013, Antonelli opened the PNP. (Doc. 50-1 at ¶ 12; Doc. 56-1 at ¶ 12). At the time it opened, the PNP was "conditionally approved" by the OBN. (Doc. 50-1 at ¶ 13; Doc. 56-1 at ¶ 13). While designated "conditionally approved," Antonelli was still allowed to enroll and graduate students, and its graduates were eligible to sit for the NCLEX-PN exam and to become licensed practical nurses in the State of Ohio. (Doc. 50-1 at ¶ 15; Doc. 56-1 at ¶ 15). [2]

In November 2014, the OBN and Antonelli entered into a consent agreement ("Consent Agreement") (Doc. 50-1 at ¶ 14; Doc. 56-1 at ¶ 14). [3] The Consent Agreement recognized that the PNP had not met certain standards set forth in the Ohio

---

[2] The NCLEX-PN is the exam to become a licensed practical nurse.

[3] The Consent Agreement is filed at Doc. 50-8.

Administrative Code applicable to nursing education programs and extended the PNP's conditional approval until November 2015, at which time the OBN stated it may grant or deny full approval status. (Doc. 50-8).

In November, 2015, the OBN provided Antonelli with another proposed consent agreement ("Second Consent Agreement") that would have extended the conditional approval of the program until November, 2016. (Doc. 50-1 at ¶ 16; Doc. 56-1 at ¶ 16; Doc. 50-10). The proposed Second Consent Agreement again explained that the PNP had not met certain standards set forth in the Ohio Administrative Code applicable to nursing education programs. (Doc. 50-10). Antonelli was required to sign the proposed Second Consent Agreement by November 12, 2015. (*Id.* at 2).

Instead of signing the proposed Second Consent Agreement by the required date, Ms. Barnette, then the Program Administrator of the PNP, added proposed modifications and returned it to the OBN. (Doc. 50-1 at ¶ 17; Doc. 56-1 at ¶ 17). Ms. Barnette's changes were rejected and the deadline for Antonelli to sign Second Consent Agreement passed. (Doc. 50-1 at ¶ 18; Doc. 56-1 at ¶ 18).

On November 20, 2015, the OBN issued a Notice of Opportunity for Hearing ("Notice") to Antonelli. (Doc. 50-1 at ¶ 19; Doc. 56-1 at ¶ 19; Doc. 50-13). The Notice informed Antonelli that the OBN "is authorized to propose to deny full approval and withdraw conditional approval of the [PNP] based on its failure to meet and maintain the standards established in rules adopted under Section 4723.07, ORC." (Doc. 50-13 at 5). The Notice gave Antonelli thirty days to request a hearing. (*Id.*)

Ms. Barnette drafted a Request for Hearing ("Request") and mailed it to the OBN on December 14, 2015. (Doc. 50 at ¶ 21).[4] On January 4, 2016, Ms. Barnette contacted the OBN to inquire as to the hearing date. (Doc. 50-1 at ¶ 22; Doc. 56-1 at ¶ 22). The OBN advised it had not received Ms. Barnette's request. (Doc. 50-1 at ¶ 23; Doc. 56-1 at ¶ 23).

Subsequently, the OBN issued an Order withdrawing the PNP's conditional approval and denying full approval status for the program; the Order was sent via Certified Mail to Antonelli on March 29, 2016. (Doc. 50-1 at ¶ 24; Doc. 56-1 at ¶ 24). On March 30, 2016, the PNP was suspended. (Doc. 50-1 at ¶ 25).

Antonelli filed a Motion to Stay against the OBN in the Franklin County, Ohio, Court of Common Pleas on April 11, 2016. The Motion for Stay was granted and the program was re-opened after less than 20 days. (Doc. 50-1 at ¶ 26; Doc. 56-1 at ¶ 26).

The issue of whether Antonelli properly made a Request for Hearing that must be honored by the OBN was then before the Court of Common Pleas. A hearing was held on April 26, 2016. On May 11, 2016, the Court ruled in Antonelli's favor and ordered that Antonelli had complied with the requirements to request a hearing and was, therefore, entitled to a hearing before the OBN. (Doc. 50-1 at ¶ 27; Doc. 56-1 at ¶ 27).

The Administrative Hearing with the OBN was conducted before Hearing Examiner Ronda Shamansky on September 20-21, 2016. (Doc. 50-1 at ¶ 28; Doc. 56-1 at ¶ 28). Thereafter, Ms. Shamansky entered her Report and Recommendation

---

[4] Ms. Borden admits that Ms. Barnette claimed she drafted a Request for Hearing and placed it in the mail, but does not cite to any affirmative evidence disputing this claim as required by Rule 56 and this Court's Standing Order Governing Civil Motions for Summary Judgment.

recommending that the OBN continue conditional approval of the PNP for at least one additional year. (Doc. 50-1 at ¶ 29; Doc. 56-1 at ¶ 29).

On November 17, 2016, the OBN adopted the Report and Recommendation and ordered that conditional approval be extended for the PNP through November 16, 2017. (Doc. 50-1 at ¶ 30; Doc. 56-1 at ¶ 30).

### 2. Ms. Borden's experience in the PNP.

Ms. Borden enrolled in the PNP in or around May 2014. (Doc. 50-1 at ¶ 1; Doc. 56-1 at ¶ 1). At the time she enrolled, she signed and initialed several documents that are of consequence to this litigation.

First, Ms. Borden executed an Enrollment Agreement. (Doc. 50-1 at ¶ 32; Doc. 56-1 at ¶ 32). In bold print, the Enrollment Agreement expressly notified Ms. Borden that Antonelli does not guarantee its credits will transfer to another institution:

> **Antonelli College does not guarantee transferability of its credits to other institutions of higher education. Transfer credit is always at the discretion of the receiving institution. If you plan to transfer credit from Antonelli College to another institution, please check with the other institution before enrolling to determine if it will accept credits and/or specific courses taken at Antonelli College.**

(Doc. 50-2 at 3) (emphasis in original).

Second, concurrent with the Enrollment Agreement, Ms. Borden executed a State of Ohio Student Disclosure Form issued by the State of Ohio Board of Career Colleges and Schools. (Doc. 50-1 at ¶ 34; Doc. 56-1 at ¶ 34). Ms. Borden initialed next to the following disclosure: "I understand that the transferability of credits to another institution is determined exclusively by the receiving institution. No person can imply or

guarantee that my credits will be transferable." (*Id.*; Doc. 50-21 at 2).

Third, Ms. Borden executed a Policies and Procedures disclosure whereby she certified, *inter alia*, that she had received a copy of the Antonelli College Catalog ("College Catalog"). (Doc. 50-1 at ¶ 36; Doc. 56-1 at ¶ 36; Doc. 50-22 at 2).

The College Catalog that Ms. Borden certified she received expressly stated that the PNP had been granted "Conditional Approval" by the OBN:

> Antonelli College Practical Nursing Program was granted Conditional Approval by the Ohio Board of Nursing. Conditional Approval is the initial approval status granted to a new nursing education program that meets and maintains the requirements of Chapter 4723-5, Ohio Administrative Code, and is necessary for the implementation of the program. Graduates of the Practical Nursing program are eligible to sit for the NCLEX-PN and apply for licensure as a Licensed Practical Nurse (LPN) in the State of Ohio.

(Doc. 50-1 at ¶ 37; Doc. 50-9 at 8).[5]

Additionally, Ms. Borden saw documentation within her first six months of enrollment that identified the approval status of the PNP as conditional. (Doc. 50-1 at ¶ 38; Doc. 56-1 at ¶ 38).

After three terms, Ms. Borden withdrew from the program due to pregnancy. (Doc. 50-1 at ¶ 3; Doc. 56-1 at ¶ 3). She returned in May or July 2015.[6]

---

[5] Ms. Borden denies that she received a copy of the College Catalog. (Doc. 56-1 at ¶ 37). However, she admits that this language is in the College Catalog, and admits that she signed the Policies and Procedures disclosure certifying that she had received the College Catalog. (*Id.* at ¶¶ 36-37).

[6] Defendants claim Ms. Borden returned in July 2015 (Doc. 50-1 at ¶ 4); Ms. Borden claims she returned in May 2015 (Doc. 56-1 at 3). Whether Ms. Borden returned in July or May of 2015 is of no consequence to the issues presently before the Court.

Ms. Borden claims that, after Antonelli entered into the Consent Agreement which provided conditional approval from the OBN for a limited period of time, Ms. Barnette and Ms. Elkins told her she "had nothing to worry about" regarding the PNP's status with the OBN. (Doc. 56-21 at ¶¶ 13-14). Notwithstanding their representations, the OBN withdrew the PNP's conditional approval and denied full approval, causing the PNP to temporarily shut down in March 2016. (Doc. 50-1 at ¶¶ 24, 25; Doc. 56-1 at ¶ 24).

Following the shut-down of the PNP, Ms. Borden returned in April 2016, and she graduated in January 2017. (Doc. 50-1 at ¶ 5; Doc. 56-1 at ¶ 5). Ms. Borden claims delays associated with the shut-down caused her graduation date to be delayed by five months and resulted in her paying an additional five months of tuition. (Doc. 56-21 at ¶ 21).

Plaintiff passed the NCLEX-PN, became a licensed practical nurse with the State of Ohio in April 2017, and obtained full time employment as a licensed practical nurse. (Doc. 50-1 at ¶ 6; Doc. 56-1 at ¶ 6).

3. <u>Facts pertaining to Defendants' Counterclaim</u>.

By signing the Enrollment Agreement, Ms. Borden agreed to pay tuition and fees in exchange for educational services provided by Antonelli. (Doc. 50-1 at ¶ 7; Doc. 56-1 at ¶ 7).

Additionally, Ms. Borden signed a Financial Aid Application in which she certified to Antonelli that she would "be responsible for a balance [of tuition and costs] due in cash that is not paid by federal, state, or agency assistance." (Doc. 50-1 at ¶ 8; Doc. 56-1 at ¶ 8; Doc. 50-6). To pay for her tuition, Ms. Borden received Federal

Student Aid, including Pell Grants, Subsidized Loans and Unsubsidized Loans, as well as cash payments.  (Doc. 50-1 at ¶ 9; Doc. 56-1 at ¶ 9).

Defendants claim that Ms. Borden has not made a payment since January 25, 2017, and she has a balance due for unpaid tuition of $6,815.50.  (Doc. 50-1 at ¶¶ 10-11; Doc. 50-7 at 3).

Ms. Borden disputes this amount and claims that, pursuant to her Student Statement dated August 2017, her outstanding balance is only $4,790.50.  (Doc. 56-21 at ¶ 27).

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

# III.  ANALYSIS

## A.  Ms. Borden does not have standing to assert the ODTPA claim.

Count One of the Amended Complaint alleges that Defendants violated the ODTPA by making deceptive, false and misleading statements concerning the PNP. (Doc. 30 at ¶¶ 75-83).  Count One alleges Defendants' deceptive, false and misleading statements deceived Ms. Borden, influenced her decision to pay for and enroll in the PNP, and that she has been damaged as a direct result.  (Doc. 30 at ¶¶ 77-79).

Defendants argue Ms. Borden does not have standing to pursue this claim because she is an individual consumer and has not suffered a commercial injury.  (Doc. 50 at 10-13).  The Court agrees.

Under the ODTPA, a person engages in an unlawful "deceptive trade practice" when, in the course of the person's business, vocation, or occupation, he or she, *inter alia*:

> (7)     represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

> (9)     represents that goods or services are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if they are of another.

Ohio Rev. Code § 4165.02(A)(7) and (9).

The ODTPA confers standing on a "person who is likely to be damaged by a person who commits a deceptive trade practice" or a "person who is injured by a person who commits a deceptive trade practice."  *Id.* at § 4165.03(A)(1).  The statute defines a

"person" as an "individual, corporation, government . . . or any other legal or commercial entity." *Id.* at § 4165.01(D).

The majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA. *See Terlesky v. Fifth Dimension, Inc.*, Case No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236, at ** 5-7 (S.D. Ohio Nov. 17, 2015) (Dlott, J.) ("a 'consumer' does not have standing to commence a civil action under the ODTPA"); *Citimortgage, Inc. v. Crawford*, 934 F. Supp. 2d 942, 950 (S.D. Ohio 2013) (Black, J.) ("a consumer does not have standing to [s]ue under the DTPA"); *Phillips v. Phillip Morris Cos.*, 290 F.R.D. 476, 484 (N.D. Ohio 2013) (Lioi, J.) ("consumers lack standing to bring claims under the DTPA"); *Lester v. Wow Car Co.*, Case No. 2:11-cv-850, 2014 U.S. Dist. LEXIS 77567, at ** 30-35 (S.D. Ohio June 6, 2014) (Sargus, J.); *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 697-99 (S.D. Ohio 2012) (Smith, J.); *In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 873-75 (S.D. Ohio 2012) (Frost, J.); *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 649-650 (N.D. Ohio 2012) (Polster, J.).

A minority of courts (two) have held individual consumers <u>do</u> have standing based on the statute's plain language that it applies to "individuals." *Schumacher v. State Auto Mut. Ins. Co.*, 47 F. Supp. 3d 618, 630-33 (S.D. Ohio 2014) (Spiegel, J.); *Bower v. IBM*,

495 F. Supp. 2d 837, 842-44 (S.D. Ohio 2007) (Rice, J.).[7]

Courts in the majority have asserted two primary reasons in support of their conclusion that individual consumers lack standing under the ODTPA. First, most courts have reasoned that the ODTPA is analogous to Section 43(a) of the Lanham Act, which similarly confers standing on "any person who believes that he or she is likely to be damaged" by conduct prohibited under the Act. Despite this language, federal courts have consistently held individual consumers lack standing under Section 43(a) because they are not within the class of persons that the Lanham Act was designed to protect, *i.e.*, persons engaged in commerce. *See Robins*, 838 F. Supp. 2d at 650 (explaining consumers lack standing under the ODTPA because it is analogous to the Lanham Act, which only protects "persons engaged in commerce, not individual consumers, against unfair competition") (quotation omitted); *see also In re Porsche Cars*, 880 F. Supp. 2d at 873-75 ("the ODTPA is substantially similar to Section 43(a) of the Lanham Act and the Lanham Act protects the interests of a purely commercial class that does not include individual consumers") (citation omitted); *Terlesky*, 2015 U.S. Dist. LEXIS 155236, at * 6.

These courts find support for this reasoning in *Dawson v. Blockbuster, Inc.*, a decision from the Ohio Eighth District Court of Appeals which expressly holds consumers do not have standing under the ODTPA because it is substantially similar to

_____

[7] The Supreme Court of Ohio has not resolved this conflict. In 2010, Judge O'Malley in the Northern District of Ohio determined that the issue of whether an individual has standing under the ODTPA should be certified to the Supreme Court of Ohio. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 752 (N.D. Ohio 2010). However, the issue was never certified as the plaintiff in that case dismissed the ODTPA claim. *Robins*, 838 F. Supp. 2d at 649, n. 3.

the Lanham Act, which protects the interests of a purely commercial class. 8th Dist. Cuyahoga No. 86451, 2006-Ohio-1240, ¶¶ 23-25. The state appellate court reasoned in *Dawson* that claims under the ODTPA are to be analyzed like claims arising under federal statutes concerning unfair competition. *Id.* at ¶ 23. More recently, the Ohio Fourth District Court of Appeals agreed with *Dawson* and held that individuals do not have standing under the ODTPA. *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, ¶¶ 29-33 (4th Dist.).

The Sixth Circuit Court of Appeals expressly approved this analysis in affirming a district court's dismissal of a consumer's ODTPA claim:

> The district court dismissed [plaintiff's] ODTPA claim based on its determination that [plaintiff] and the other putative class members, as consumers, lacked standing to bring claims under the ODTPA. As the Ohio Supreme Court has not considered the issue, we look for guidance to the Ohio Court of Appeals. . . . In *Dawson v. Blockbuster, Inc.*, 2006 Ohio 1240, 2006 WL 1061769, at *3-4 (Ohio Ct. App. 2006), the court held that consumers do not have standing to raise ODTPA claims because (1) the ODTPA and the federal Lanham Act are "substantially similar," and (2) all federal courts of appeal to have considered the issue have held that consumers do not have standing under the Lanham Act. The Ohio Supreme Court declined to accept the appeal for review in *Dawson v. Blockbuster, Inc.*, 110 Ohio St. 3d 1442, 2006 Ohio 3862, 852 N.E.2d 190 (Ohio 2006).
>
> Although [Plaintiff] asserts various reasons why we should distinguish the ODTPA from the Lanham Act, he has failed to make the requisite strong showing that the Ohio Supreme Court would decide this issue differently. We therefore affirm the district court's decision that [plaintiff] does not have standing to raise an ODTPA claim as a consumer.

*Holbrook v. Louisiana-Pacific Corp.*, 533 Fed. App'x 493, 497-98 (6th Cir. 2013).

Second, courts have explained that conferring standing on consumers under the ODTPA would render the Ohio Consumer Sales Practices Act ("OCSPA") superfluous, because both statutes regulate the same type of conduct, but the OCSPA expressly applies to <u>consumer</u> transactions. *See Phillips*, 290 F.R.D. at 484 (explaining that the state legislature's subsequent passage of the OCSPA evidences an intent that the ODTPA not apply to consumers); *Gascho*, 863 F. Supp. 2d at 699 ("the DTPA addresses commercial injury, and not consumer injury (which is addressed by the CSPA)"); *Robins*, 838 F. Supp. 2d at 650.[8]

The Court appreciates that there is a split of authority on the issue of whether, under Ohio law, individual consumers have standing to assert a claim under the ODTPA. However, the Court agrees with the majority of courts to consider the issue and holds that individual consumers do not have standing.

First, the Court finds the reasoning set forth in, *inter alia*, *Terlesky*, *In re Porsche Cars*, and *Robins* that the ODTPA is to be interpreted consistently with the analogous Lanham Act to be well-reasoned and persuasive.

Second, and importantly, the Sixth Circuit has expressly approved this analysis and reasoning. *Holbrook*, 533 Fed. App'x at 497-98.

Third, two Ohio state appellate courts have expressly held that the ODTPA, like the Lanham Act, does not apply to consumers. *Hamilton*, 2014-Ohio-1118, ¶¶ 29-33;

---

[8] The OCSPA proscribes suppliers from committing unfair or deceptive acts in connection with consumer transactions, including, *inter alia*, that the subject of a transaction has "sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have," or that the subject of a consumer transaction "is of a particular standard, quality, grade, style, prescription, or model, if it is not[.]" *See* Ohio Rev. Code § 1345.02(B)(2)-(3).

*Dawson*, 2006-Ohio-1240, ¶¶ 23-25. This Court is not to disregard these decisions from Ohio's intermediate appellate courts unless it is convinced the Supreme Court of Ohio would decide the issue differently. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). The Court is not convinced that the highest court of the state would decide otherwise. The Court agrees with Judge Frost that the Supreme Court of Ohio is likely to agree with the position set forth in *Dawson*. *See In re Porsche Cars*, 880 F. Supp. 2d at 875.

Fourth, and finally, the Court agrees that a contrary holding would render the OCSPA superfluous. *See Hamilton*, 2014-Ohio-1118, ¶ 13 ("The proper remedy for consumers seeking redress against unfair, deceptive, or unconscionable acts in the sale of consumer goods or services is through the CSPA") (emphasis supplied); *Phillips*, 290 F.R.D. at 484; *Robins*, 838 F. Supp. 2d at 650.

Here, Ms. Borden, as an individual consumer, does not have standing to pursue an ODTPA claim. *See Holbrook*, 533 Fed. App'x at 497-98; *Terlesky*, 2015 U.S. Dist. LEXIS 155236, at ** 5-7; *Crawford*, 934 F. Supp. 2d at 950; *Phillips*, 290 F.R.D. at 484; *In re Porsche Cars*, 880 F. Supp. 2d at 873-74; *Robins*, 838 F. Supp. 2d at 649-650.

Accordingly, Defendants' motion for summary judgment (Doc. 50) is **GRANTED** on Count One of the Complaint.

**B. Ms. Borden's breach of contract claim fails on the facts and the law.**

Count Two of the Complaint asserts a claim for breach of contract. (Doc. 30 at ¶¶ 84-88). Specifically, Count Two alleges Defendants breached the terms of the Student Handbook and the Antonelli Loan Agreement (the "Contracts").

The Complaint does not attach or describe any provision of the Antonelli Loan Agreement.[9] The Complaint identifies a few provisions of the Student Handbook. Specifically, the Student Handbook's mission statement provides:

> Antonelli College's Practical Nursing Program is offered by the Department of Nursing. The program prepares knowledgeable nursing graduates by providing a caring, diverse, and student-centered learning environment that nurtures critical thinking and enriches holistic healthcare across the lifespan. All activities of the nursing program are guided by the college's mission, as reflected in the specific goals, purposes and philosophy of the nursing program.

(Doc. 30 at ¶ 27). The Student Handbook also states that the PNP "prepares students for [the NCLEX-PN] required by the Ohio Board of Nursing for the licensure to practice as a Licensed Practical Nurse." (*Id.* at 28).

The Complaint alleges that Defendants breached the Contracts in two ways: first, by "not properly preparing [Ms. Borden] for taking the tests associated with obtaining [her] licensure as an LPN" (Doc. 30 at ¶¶ 86-87) and second, by "making it impossible for [her] to obtain [her] degree[]" (*id.* at ¶ 87).

---

[9] Ms. Borden did not receive a loan through the Antonelli College Loan Program. (Doc. 50-1 at ¶ 42; Doc. 56-1 at ¶ 42).

Defendants argue Ms. Borden's breach of contract claim is disproven by the undisputed facts and is an impermissible "educational malpractice" claim in disguise. (Doc. 50 at 6-7). The Court agrees.

First, to the extent Ms. Borden's breach of contract claim argues Defendants did not "properly prepar[e]" her to take the NCLEX-PN, it is an impermissible claim for "educational malpractice." A claim that educational services provided were inadequate constitutes a claim for educational malpractice. *Rockwood v. Shoen*, 145 F. Supp. 3d 718, 724 (S.D. Ohio 2015) (Frost, J.). Ohio does not recognize educational malpractice claims for public policy reasons. *Id.*; *see also Hutchings v. Vanderbilt Univ.*, 55 Fed. App'x 308, 310 (6th Cir. 2003) ("Courts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services"); *Lawrence v. Lorain Community College*, 127 Ohio App. 3d 546, 549 (9th Dist. 1998) (plaintiff's claim that school breached a contract by "providing substandard education, guidance and supervision" failed because "Ohio does not recognize educational malpractice claims for public policy reasons").

Second, to the extent the breach of contract claim argues that Defendants made it impossible for Ms. Borden to obtain a degree, that claim fails because Ms. Borden graduated from the PNP, sat for the NCLEX-PN exam, passed the NCLEX-PN exam, and obtained employment as a licensed practical nurse. [10] (Doc. 50-1 at ¶ 6; Doc. 56-1

---

[10] To the extent Ms. Borden's argument that Defendants prevented her from getting a degree refers to her allegations that the credits she earned at Antonelli did not transfer to an RN program, that claim fails for the reasons set forth in Section III(C), *infra*.

at ¶ 6).

Ms. Borden's argument to the contrary lacks merit. Ms. Borden argues that, pursuant to the Enrollment Agreement, the tuition she paid to Antonelli should have included costs for textbooks, clinical supplies, and uniforms. (Doc. 56 at 11-12). Ms. Borden argues Defendants breached this provision of the Enrollment Agreement because textbooks were not delivered on time, there was a shortage of clinical supplies, scrubs were late or not ordered, and the clinical facilities were in substandard condition. (*Id.*)

This argument fails because <u>none of these facts are alleged in the Complaint, as the basis of a claim for breach of contract or otherwise</u>. The Complaint does not allege that Defendants failed to provide any book, supply, uniform, or clinical facility, nor does it explain how such failure would constitute a breach of contract. [11] The law is clear that a party may not expand a claim in response to a motion for summary judgment in order to create an issue of fact. *See Pharos Capital Partners, L.P. v. Touche, L.L.P.*, 905 F. Supp. 2d 814, 831 (S.D. Ohio 2012) (Graham, J.) ("The Sixth Circuit has made clear that a party may not 'expand its claims to assert new theories' in response to a motion for summary judgment") (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).

The breaches alleged in the Complaint—that Defendants did not properly prepare Ms. Borden for the NCLEX-PN and prevented her from obtaining a degree—fail on the

---

[11] While a plaintiff is not required to set out every fact in support of its claim in the complaint, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 U.S. App. LEXIS 26601, at * 14 (6th Cir. Oct. 19, 1999).

law and the undisputed facts.  Ms. Borden's argument at the summary judgment stage

that Defendants also breached a contract by failing to provide books and supplies was not

pled in the Complaint and cannot be raised at this stage.  *Pharos Capital Partners*, 905 F.

Supp. 2d at 831.

Accordingly, Defendants' motion for summary judgment (Doc. 50) is **GRANTED**

on Count Two of the Complaint (breach of contract).

### C.  Ms. Borden's claims for fraud, constructive fraud, intentional misrepresentation, and negligent misrepresentation are barred, in part, by written agreements.

Counts Three, Four, Five and Six assert claims of fraud, constructive fraud,

intentional misrepresentation and negligent misrepresentation (collectively, the

"Misrepresentation Claims"). The Court addresses these claims together because they

contain almost identical elements and supporting facts, namely that Defendants

misrepresented and/or concealed certain information, and Ms. Borden relied on

Defendants' misrepresentation and/or concealment to her detriment.

Ms. Borden identifies three categories of information she contends supports the

Misrepresentation Claims.  First, Ms. Borden argues Defendants misrepresented the

existence of agreements with other schools that allowed credits to transfer to RN

programs.  (Doc. 56 at 12; Doc. 56-21 at ¶ 4).  Second, Ms. Borden argues that Antonelli

misrepresented/concealed the fact that the PNP was only "conditionally" approved by the

OBN.  (Doc. 56 at 13; Doc. 56-21 at ¶ 5).  Third, Ms. Borden argues that, after entering

into the Consent Agreement, Defendants concealed the temporary nature of the PNP's

conditional approval by reassuring Ms. Borden that she had "nothing to worry about"

regarding the PNP's approval status shortly before the PNP was temporarily shut down. (Doc. 56 at 14-15; Doc. 56-21 at ¶¶ 13-14).

Defendants argue that all of Ms. Borden's misrepresentation claims are impermissible educational malpractice claims in disguise. (Doc. 50 at 6-7). The Court does not agree. The Misrepresentation Claims allege wrongful conduct in addition to and separate from the PNP's allegedly inadequate instruction, and, accordingly, are not impermissible educational malpractice claims. *See Rockwood*, 145 F. Supp. 3d at 724 (defining an educational malpractice claim as a "claim that educational services provided were inadequate") (citation omitted).

Defendants argue the Misrepresentation Claims are barred to the extent they are premised on the alleged misrepresentation that Antonelli credits would transfer to RN programs. (Doc. 50 at 8-9). The Court agrees. A claim cannot be sustained when a plaintiff seeks to contradict the plain language of a written contract or disclosure. *Irvin v. American General Financial, Inc.*, No. CR2004-0046, 2005 Ohio App. LEXIS 3271, at ** 10-11 (Ohio App. June 30, 2005) (affirming dismissal of fraud claims that were directly contradicted by signed written disclosures); *Williams v. CitiMortgage, Inc.*, No. 2:08-cv-368, 2011 U.S. Dist. LEXIS 35800, at ** 12-13 (S.D. Ohio Mar. 31, 2011) (Watson, J.).

Here, Ms. Borden signed the Enrollment Agreement, which explicitly states, in bold print, that Antonelli does not guarantee that its credits will transfer, that transfer credit is always at the discretion of the receiving institution, and that prospective students

who plan to transfer Antonelli credits to another institution should check with that institution prior to enrolling to determine if their credits will transfer. (Doc. 50-2 at 3).

In addition to the Enrollment Agreement, Ms. Borden executed the Ohio Student Disclosure Form, and placed her initials next to the following disclosure: "I understand that the transferability of credits to another institution is determined exclusively by the receiving institution. No person can imply or guarantee that my credits will be transferable." (Doc. 50-21 at 2).

Because Ms. Borden acknowledged that Antonelli did not guarantee its credits would transfer by signing the Enrollment Agreement and the Ohio Student Disclosure Form, her claim that Defendants misrepresented the transferability of Antonelli Credits fails as a matter of law. *Irvin*, 2005 Ohio App. LEXIS 3271, at ** 10-11; *Williams*, 2011 U.S. Dist. LEXIS 35800, at ** 12-13.

Similarly, Defendants argue the Misrepresentation Claims are barred to the extent they are premised on Defendants' alleged misrepresentation that the PNP was "fully" approved by the OBN when it was only "conditionally" approved. (Doc. 50 at 11). The Court agrees. Ms. Borden admits she signed the Policies and Procedures disclosure, which states that she received a copy of the College Catalog. (Doc. 50-1 at ¶ 36; Doc. 56-1 at ¶ 36; Doc. 50-22 at 2). The College Catalog expressly stated that the PNP was granted "Conditional Approval" by the OBN. (Doc. 50-1 at ¶ 37; Doc. 50-9 at 8). Ms. Borden's certification that she had received the College Catalog bars the Misrepresentation Claims to the extent they are premised on Defendant's allegedly

misrepresenting that Antonelli was "fully" certified by the OBN. *Irvin*, 2005 Ohio App. LEXIS 3271, at ** 10-11; *Williams*, 2011 U.S. Dist. LEXIS 35800, at ** 12-13.

Finally, Defendants argue that the Misrepresentation Claims fail to the extent they are premised on Ms. Borden's allegations that Defendants concealed the Consent Agreement and misrepresented that Ms. Borden had "nothing to worry about" regarding Antonelli's status with the OBN. Specifically, Defendants argue that the Consent Agreement was posted in the student lounge as required by its terms. (Doc. 61 at 5).

The Court does not agree with Defendants' position. Ms. Borden argues that Ms. Barnette and Ms. Elkins told her she had "nothing to worry about" regarding the PNP's status with the OBN while concealing the fact that, pursuant to the Consent Agreement, the PNP was only conditionally approved for a temporary period of one year, at which point conditional approval could be suspended or revoked. (Doc. 56 at 14; Doc. 56-21 at ¶¶ 13-14; Doc. 30 at ¶ 53). Ms. Borden claims these representations were false as demonstrated by the fact that the OBN subsequently suspended the PNP, which delayed Ms. Borden's graduation date by five months and caused her to incur an additional five months of tuition expenses. (Doc. 56 at 14; Doc. 56-21 at ¶¶ 17, 21).

At this stage, Ms. Borden has set forth sufficient evidence to create an issue of fact as to whether Defendants' assertion that Ms. Borden "had nothing to worry about" regarding OBN approval and alleged concealment of the Consent Agreement constitute actionable misrepresentations. Accordingly, Defendants' motion for summary judgment (Doc. 50) is **DENIED** as to Ms. Borden's claims for fraud, constructive fraud, intentional misrepresentation, and negligent misrepresentation.

### D. Ms. Borden's fraud and intentional misrepresentation claims are duplicative.

Count Five of the Complaint asserts a claim for "intentional misrepresentation." There is another word for an intentional misrepresentation: fraud. In Ohio, claims for "fraud" and "intentional misrepresentation" have the same elements. *See Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 49, 570 N.E.2d 1076 (1991) (the elements of fraud are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance); *see also Carpenter v. Scherer- Mountain Ins. Agency*, 135 Ohio App. 3d 316, 733 N.E.2d 1196 (4th Dist. 1999) (reciting the same elements for a cause of action for "intentional misrepresentation")

Here, the Complaint asserts claims for both "fraud" and "intentional misrepresentation." (Doc. 30 at ¶¶ 89-97, 108-112). Both claims are premised on the same factual allegations and plead the same elements—an intentional misrepresentation, detrimental reliance, and damages. (*Id.*)

Courts have authority to dismiss duplicative claims *sua sponte*. *See Macineirghe v. Cnty. Of Suffolk*, Case No. 13-cv-1512, 2015 U.S. Dist. LEXIS 94635, at * 39 (E.D. N.Y. July 21, 2015) ("it is within the Court's discretion to dismiss duplicative claims *sua sponte*.") Accordingly, Ms. Borden is **ORDERED** to file a memorandum within

fourteen days of the date of this Order showing cause as to why the Court should not dismiss her intentional misrepresentation claim (Count Five) as duplicative of her fraud claim (Count Three).

**E.  Ms. Borden abandoned her promissory estoppel claim.**

Count Seven asserts a claim for promissory estoppel.  (Doc. 30 at ¶¶ 119-125). Specifically, Count Seven alleges that Ms. Borden relied on Defendants' representations and promises to her detriment by enrolling in the PNP.  (*Id.*)

Defendants argue this claim fails because the Complaint does not identify "a clear and unambiguous promise." [12]

The Court agrees that summary judgment is appropriate, but for a different reason. Under binding Sixth Circuit precedent, "a plaintiff is deemed to have abandoned a claim when the plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed. App'x 368, 372 (6th Cir. 2013).

Here, Ms. Borden did not respond to Defendants' argument regarding promissory estoppel.  Under binding Sixth Circuit precedent, the claim is deemed abandoned.  *Id.* Accordingly, Defendants' motion for summary judgment (Doc. 50) is **GRANTED** on Count Seven of the Complaint for promissory estoppel.

**F.  Ms. Borden's unjust enrichment claim is barred by an express contract.**

Count Eight of the Complaint asserts a claim for unjust enrichment.  (Doc. 30 at

---

[12] The elements of a promissory estoppel claim are "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise."  *Pappas v. Ippolito*, 177 Ohio App. 3d 625, 2008-Ohio-3976, ¶ 55, 895 N.E.2d 610.

¶¶ 126-129). Count Eight alleges that Ms. Borden conferred a benefit on Defendants by paying tuition and other costs and Defendants' retention of those benefits under the circumstances alleged in the Complaint would be unjust. (*Id.*)

Defendants argue the unjust enrichment claim fails as a matter of law because Ms. Borden's enrollment is governed by an express contract, the Enrollment Agreement. (Doc. 50 at 17).

The Court agrees with Defendants. In Ohio, claims for unjust enrichment cannot be brought "where the subject matter of the claim[] is governed by a contract between the parties." *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078, 1086 (S.D. Ohio 1992) (Kinneary, J.); *Retirement Ctrs. Of Am. v. St. Leonard Ctr.*, Case No. C-3-90-343, 1992 U.S. Dist. LEXIS 22744, at ** 33-34 (S.D. Ohio July 8, 1992) ("one may not recover for unjust enrichment where an express contract between the parties covers the same subject as the claim of unjust enrichment") (Rice, J.).

Here, the existence of the Enrollment Agreement, which expressly provides for Ms. Borden's payments to Antonelli in exchange for her enrollment in the PNP program, bars her claim that Defendants have been unjustly enriched by retaining those payments. *Davis & Tatera, Inc.*, 765 F. Supp. At 1086; *Retirement Ctrs. Of Am.*, 1992 U.S. Dist. LEXIS 22744 at ** 33-34.

Accordingly, Defendants' motion for summary judgment (Doc. 50) is **GRANTED** on Count Eight (unjust enrichment).

**G. Antonelli is not entitled to summary judgment on the Counterclaim.**

As part of Defendants' motion, Antonelli requests summary judgment on its Counterclaim against Ms. Borden. Specifically, Antonelli argues that Ms. Borden breached terms of the Enrollment Agreement and Financial Aid Application requiring her to pay Antonelli for the balance of tuition that is not paid by federal, state, or emergency assistance. (Doc. 50 at 19-20). Antonelli claims that balance is $6,815.50.

Ms. Borden asserts two arguments in response. First, Ms. Borden argues that the amount Antonelli seeks is incorrect. Ms. Borden argues that her Student Statement, dated August 11, 2017, shows that her balance due is only $4,790.50. (Doc. 56-21 at ¶ 27; *id.* at Ex. 2). Second, Ms. Borden argues any amount she owes Defendants should be reduced by the damages she incurred as a result of her graduation date being delayed by five months as a result of Defendants' conduct. (Doc. 56 at 21).

At this stage, Ms. Borden has demonstrated that an issue of fact exists that precludes summary judgment on Antonelli's counterclaim. Specifically, an issue of fact exists as to the balance owed by Ms. Borden. Defendants' motion for summary judgment (Doc. 50) is **DENIED** to the extent it seeks judgment on Antonelli's counterclaim.

**H. Individual Defendants.**

Defendants also ask the Court to dismiss Ms. Borden's claims against the individual defendants, Ms. Davis, Mr. Bjarnson, Ms. Elkins, and Ms. Barnette. (Doc. 50 at 18-19).

Ms. Borden argues that she has viable claims against Ms. Davis. (Doc. 56 at 20). Ms. Borden argues that Ms. Davis is the owner of Antonelli and is the sole person who could approve purchase orders for books, supplies, and scrubs. (*Id.*).

The Court does not agree. As explained in Section III(B), *supra*, Defendants are entitled to summary judgment on Ms. Borden's (untimely asserted) claims that Defendants breached a contract by failing to deliver books and supplies. There is no affirmative evidence suggesting that Ms. Davis is personally liable for any of Ms. Borden's remaining claims.

Ms. Borden argues that she has viable claims against Ms. Elkins and Ms. Barnette because they personally made false statements upon which Ms. Borden relied. (Doc. 56 at 20-21).

The Court agrees. Ms. Borden has presented affirmative evidence that Ms. Barnette and Ms. Elkins told her that she had "nothing to worry about" regarding the PNP's OBN approval while concealing their knowledge that the Consent Agreement only provided temporary conditional approval. (Doc. 56-21 at ¶¶ 13-14). Ms. Borden has, at a minimum, demonstrated an issue of fact as to whether Ms. Barnette and Ms. Elkins are personally liable for those alleged misrepresentations.

Ms. Borden argues that she has viable claims against Mr. Bjarnson, individually, because he did not inform her of the probable closure of the PNP. (Doc. 56 at 21).

The Court does not agree. The Complaint does not allege any operative facts regarding Mr. Bjarnson, and Ms. Borden has not submitted any affirmative evidence to support her theory that he is personally liable for any of her remaining claims.

Accordingly, Defendants' motion for summary judgment (Doc. 50) is **GRANTED** as to Ms. Borden's claims against Ms. Davis and Mr. Bjarnson, individually, and **DENIED** as to Ms. Borden's claims against Ms. Elkins and Ms. Barnette, individually.

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment on the claims of Plaintiff Annie Borden (Doc. 50) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, Defendant's motion (Doc. 50) is:

1.  **GRANTED** on Ms. Borden's claims for violation of the Ohio Deceptive Trade Practices Act (Count One), breach of contract (Count Two), promissory estoppel (Count Seven), and unjust enrichment (Count Eight);

2.  **GRANTED** on Ms. Borden's claims against Ms. Davis and Mr. Bjarnson, individually;

3.  **DENIED** on Ms. Borden's claims for fraud (Count Three), constructive fraud (Count Four), intentional misrepresentation (Count Five), and negligent misrepresentation (Count Six);

4.  **DENIED** on Ms. Borden's claims against Ms. Barnette and Ms. Elkins, individually; and

5.  **DENIED** on Antonelli's Counterclaim.

Ms. Borden is **ORDERED** to file a memorandum within fourteen days of the date of this Order showing cause as to why the Court should not dismiss her intentional misrepresentation claim (Count Five) as duplicative of her fraud claim (Count Three).

**IT IS SO ORDERED.**

Date:  _____3/29/2018_____

_Timothy S. Black_
Timothy S. Black
United States District Judge

27