# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ANNIE BORDEN, *et al.*, : | Case No. 1:16-cv-519 |
|     Plaintiffs, : | |
| : | Judge Timothy S. Black |
| vs. : | |
| : | |
| ANTONELLI COLLEGE, *et al.*, : | |
|     Defendants. : | |

## ORDER GRANTING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT ON THE CLAIMS
## OF PLAINTIFF KACHENA RICHARDSON (Doc. 49)

This civil case is before the Court on Defendants' motion for summary judgment on the claims of Plaintiff Kachena Richardson (Doc. 49) and the parties' responsive memoranda (Docs. 55, 60).[1]

## I.     BACKGROUND

**A. Introduction.**

Plaintiffs Annie Borden and Kachena Richardson commenced this lawsuit, which alleges that Defendants engaged in deceptive and misleading marketing and advertising practices. Plaintiffs are former students in Antonelli's Practical Nursing Program ("PNP"). Plaintiffs' claims, which are asserted on behalf of themselves and a putative class, are premised on their contentions that Defendants misrepresented facts about the PNP, including its quality and approval from the Ohio Board of Nursing ("OBN"), and failed to provide adequate instruction.

---

[1] "Defendants" are Technology Training Systems, Inc. d/b/a Antonelli College ("Antonelli"), Mary Ann Davis, Corey Bjarnson, Leah Elkins, and Marre Barnette.

Defendants filed separate motions for summary judgment on the claims of Ms. Richardson and Ms. Borden. The current motion pertains to Ms. Richardson's claims. For background purposes, the facts <u>alleged</u> in the Second Amended Complaint (Doc. 30) relevant to Ms. Richardson's claims are as follows:

Ms. Richardson contacted Antonelli College in response to advertisements of its PNP. (Doc. 30 at ¶ 58). From the outset, Ms. Richardson made clear to Antonelli recruiters and administrators that her goal was to achieve a degree as a registered nurse, and a practical nursing diploma was only the first step. Recruiters and administrators from Antonelli assured Ms. Richardson that the PNP was "fully accredited" and that its credits were fully transferable to schools offering a registered nursing degree ("RN") through reciprocity agreements. (*Id.* at ¶¶ 59, 60). Ms. Richardson claims these representations were not true.[2]

---

[2] The Complaint alleges the following facts regarding Antonelli's approval with the OBN: In November, 2012, the State of Ohio granted conditional approval to the PNP (Doc. 30 at ¶ 25). On July 30, 2014, the OBN found Antonelli deficient in meeting certain requirements, including maintaining classroom equipment and supplies necessary for students to complete the program. (*Id.* at ¶¶ 29-30). On November 21, 2014, Antonelli and the OBN entered into a consent agreement ("Consent Agreement"). (*Id.* at ¶ 31). The Consent Agreement required Antonelli to comply with certain additional obligation and conditions in order for the PNP to stay open. (*Id.* at ¶¶ 32-33). In November, 2015, the OBN determined Antonelli failed to meet several requirements set forth in the Consent Agreement, including, *inter alia*, failure to provide certain training opportunities and clinical experiences. (*Id.* at ¶¶ 37-38). On March 17, 2016—after Ms. Richardson had graduated—the OBN revoked Antonelli's conditional approval status and stripped the PNP of accreditation. (*Id.* at ¶ 40). Antonelli students learned of the revocation on March 30, 2016, when Antonelli suspended classes. (*Id.* at ¶ 41). In July, 2016, the OBN proposed to withdraw the PNP's conditional approval and deny full approval status. (*Id.* at ¶ 46). Antonelli was able to force reinstatement of its conditional approval from the Franklin County Court of Common Pleas until the OBN scheduled a hearing on Antonelli's failures. (*Id.* at ¶ 47).

Ms. Richardson entered the PNP in September, 2013, as a member of the program's inaugural class. (Doc. 30 at ¶ 58). Ms. Richardson excelled in the PNP, maintaining a 4.0 grade point average. However, it became apparent that Antonelli's instruction was deficient. (*Id.* at ¶ 61). For example, an instructor once walked out during a scheduled class, informing students that Antonelli was not paying her. (*Id.*)

When Ms. Richardson found out that Antonelli was not "fully" accredited by the OBN, she met with Ms. Barnette, the administrator of the PNP, and Edward Nito, the president of Antonelli through April 2015, to ask about Antonelli's status. (Doc. 30 at ¶ 63). President Nito informed Ms. Richardson that Antonelli's full accreditation depended entirely on her class of five maintaining a 100% graduation rate and 100% NCLEX-PN passage rate.[3] (*Id.*) When Ms. Barnette expressed concern that Antonelli was not meeting the minimal requirements set forth by the OBN, Mr. Nito replied: "We'll get this done." (*Id.*)

Ms. Richardson and her four classmates graduated in August 2014 and passed the NCLEX-PN. (*Id.* at ¶ 64). Despite their efforts, the OBN imposed a Consent Agreement on the PNP because of Antonelli's deficiencies. (*Id.*)

Ms. Richardson and her classmates, all of whom wanted to continue for an RN degree, soon found out that Antonelli's assurances that Antonelli credits would be transferable to RN programs were false. (Doc. 30 at ¶ 65). Ms. Richardson applied to the University of Cincinnati, NKU, Cincinnati State, Good Samaritan Hospital's School of Nursing, Christ Hospital's School of Nursing, Mount St. Joseph College, and

---

[3] The NCLEX-PN is the test to become a licensed practical nurse.

Claremont College. (*Id.*) None would accept any of her Antonelli credits. (*Id.*) Only other for-profit colleges showed any willingness to accept Antonelli's credits—and then only a minimal number of credits, despite her outstanding grades. (*Id.*)

Ms. Richardson is currently enrolled at Cincinnati State taking remedial courses to prepare to enter its LPN program and then continue in its RN program. (Doc. 30 at ¶ 66). She is forced to repeat all of her Antonelli LPN courses, despite her 4.0 average, her diploma, and passage of the NCLEX-PN. (*Id.*) Antonelli recruiters continue to contact Ms. Richardson asking her to refer prospective students to Antonelli to increase their commissions and meet quotas. (*Id.*)

The Complaint alleges that, due to Defendants' conduct, acts, and omissions, Ms. Borden, Ms. Richardson, and putative class members have suffered damages including, but not limited to: (1) loss of the expected degree qualifying them to sit for the NCLEX-PN; (2) loss of one year or more of time and dedication to the PNP; (3) loss of tuition, fees, interest on loans, and supplemental expenses to attend the PNP; (4) loss of costs to commute, park, and/or childcare; (5) loss of future earnings; and (6) loss of earnings due to their participation in the PNP. (Doc. 30 at ¶ 67).

The Complaint asserts claims for violation of the Ohio Deceptive Trade Practices Act ("ODTPA") (Count One), breach of contract (Count Two), fraud (Count Three), constructive fraud (Count Four), intentional misrepresentation (Count Five), negligent misrepresentation (Count Six), promissory estoppel (Count Seven) and unjust enrichment (Count Eight).

**B. Defendants' motion for judgment on the pleadings.**

On January 24, 2017, the Court put on an Order granting Defendants' motion for partial judgment on the pleadings pertaining to Ms. Richardson's claims. (Doc. 38). Specifically, the Court held that Ms. Richardson could not maintain any claim premised on her allegation that Defendants orally misrepresented the transferability of Antonelli credits because those alleged oral misrepresentations were expressly contradicted by the terms of an enrollment agreement ("Enrollment Agreement") signed by Ms. Richardson. (*Id.* at 3-4). The Enrollment Agreement states, in relevant part: "Antonelli College does not guarantee transferability of its credits to other institutions of higher education." (*Id.* at 3). On this basis, the Court entered judgment in favor of Defendants on Ms. Richardson's claims for fraud (Count Three), constructive fraud (Count Four), intentional misrepresentation (Count Five), negligent misrepresentation (Count Six), and promissory estoppel (Count Seven).

Accordingly, at this juncture, Ms. Richardson's remaining claims are for violation of the ODTPA (Count One), breach of contract (Count Two), and unjust enrichment (Count Eight).

**C. Defendants' statement of undisputed facts.**

Pursuant to this Court's Standing Order Governing Civil Motions for Summary Judgment, Defendants presented the following undisputed facts:

Ms. Richardson graduated from the PNP, sat for the NCLEX-PN exam, passed the NCLEX-PN exam, and obtained employment as a licensed practical nurse. (Doc. 49-1 at ¶ 6; Doc. 55-1 at ¶ 6).

Defendant Mary Ann Davis had no direct responsibility or oversight with respect to the PNP, nor did she have any involvement with Ms. Richardson prior to the filing of this lawsuit. (Doc. 49-1 at ¶ 7). [4]

Defendant Corey Bjarnson is the Dean of Students at Antonelli's Cincinnati campus. (Doc. 49-1 at ¶ 9; Doc. 55-1 at ¶ 9).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

---

[4] Ms. Richardson denies this allegation but does not cite to any affirmative evidence in support of the denial as required by Rule 56 and this Court's Standing Order Governing Civil Motions for Summary Judgment.

## III. ANALYSIS

**A. Ms. Richardson does not have standing to assert the ODTPA claim.**

Count One of the Amended Complaint alleges that Defendants violated the ODTPA by making deceptive, false and misleading statements concerning the PNP. (Doc. 30 at ¶¶ 75-83). Count One alleges that Defendants' deceptive, false and misleading statements deceived Ms. Richardson, influenced her decision to pay for and enroll in the PNP, and that she has been damaged as a direct result. (Doc. 30 at ¶¶ 77-79).

Defendants argue Ms. Richardson does not have standing to pursue this claim because she is an individual consumer and has not suffered a commercial injury. (Doc. 49 at 7). The Court agrees.

Under the ODTPA, a person engages in an unlawful "deceptive trade practice" when, in the course of the person's business, vocation, or occupation, he or she, *inter alia*:

> (7)  represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>
> (9)  represents that goods or services are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if they are of another.

Ohio Rev. Code § 4165.02(A)(7) and (9).

The ODTPA confers standing on a "person who is likely to be damaged by a person who commits a deceptive trade practice" or a "person who is injured by a person

who commits a deceptive trade practice." *Id.* at § 4165.03(A)(1). The statute defines a "person" as an "individual, corporation, government . . . or any other legal or commercial entity." *Id.* at § 4165.01(D).

The majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA. *See Terlesky v. Fifth Dimension, Inc.*, Case No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236, at ** 5-7 (S.D. Ohio Nov. 17, 2015) (Dlott, J.) ("a 'consumer' does not have standing to commence a civil action under the ODTPA"); *Citimortgage, Inc. v. Crawford*, 934 F. Supp. 2d 942, 950 (S.D. Ohio 2013) (Black, J.) ("a consumer does not have standing to [s]ue under the DTPA"); *Phillips v. Phillip Morris Cos.*, 290 F.R.D. 476, 484 (N.D. Ohio 2013) (Lioi, J.) ("consumers lack standing to bring claims under the DTPA"); *Lester v. Wow Car Co.*, Case No. 2:11-cv-850, 2014 U.S. Dist. LEXIS 77567, at ** 30-35 (S.D. Ohio June 6, 2014) (Sargus, J.); *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 697-99 (S.D. Ohio 2012) (Smith, J.); *In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 873-75 (S.D. Ohio 2012) (Frost, J.); *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 649-650 (N.D. Ohio 2012) (Polster, J.).

A minority of courts (two) have held individual consumers <u>do</u> have standing based on the statute's plain language that it applies to "individuals." *Schumacher v. State Auto Mut. Ins. Co.*, 47 F. Supp. 3d 618, 630-33 (S.D. Ohio 2014) (Spiegel, J.); *Bower v. IBM*,

8

495 F. Supp. 2d 837, 842-44 (S.D. Ohio 2007) (Rice, J.).[5]

Courts in the majority have asserted two primary reasons in support of their conclusion that individual consumers lack standing under the ODTPA. First, most courts have reasoned that the ODTPA is analogous to Section 43(a) of the Lanham Act, which similarly confers standing on "any person who believes that he or she is likely to be damaged" by conduct prohibited under the Act. Despite this language, federal courts have consistently held individual consumers lack standing under Section 43(a) because they are not within the class of persons that the Lanham Act was designed to protect, *i.e.*, persons engaged in commerce. *See Robbins*, 838 F. Supp. 2d at 650 (explaining consumers lack standing under the ODTPA because it is analogous to the Lanham Act, which only protects "persons engaged in commerce, not individual consumers, against unfair competition") (quotation omitted); *see also In re Porsche Cars*, 880 F. Supp. 2d at 873-75 ("the ODTPA is substantially similar to Section 43(a) of the Lanham Act and the Lanham Act protects the interests of a purely commercial class that does not include individual consumers") (citation omitted); *Terlesky*, 2015 U.S. Dist. LEXIS 155236 at * 6.

These courts find support for this reasoning in *Dawson v. Blockbuster, Inc.*, a decision from the Ohio Eighth District Court of Appeals which expressly holds consumers do not have standing under the ODTPA because it is substantially similar to

---

[5] The Supreme Court of Ohio has not resolved this conflict. In 2010, Judge O'Malley in the Northern District of Ohio determined that the issue of whether an individual has standing under the ODTPA should be certified to the Supreme Court of Ohio. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 752 (N.D. Ohio 2010). However, the issue was never certified as the plaintiff dismissed the ODTPA claim. *Robins*, 838 F. Supp. 2d at 649, n. 3.

the Lanham Act, which protects the interests of a purely commercial class. 8th Dist. Cuyahoga No. 86451, 2006-Ohio-1240, ¶¶ 23-25. The state appellate court in *Dawson* reasoned that claims under the ODTPA are to be analyzed similarly to claims under federal statutes concerning unfair competition. *Id.* at ¶ 23. More recently, the Ohio Court of Appeals for the Fourth District agreed with *Dawson* and held that individuals do not have standing under the ODTPA. *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.1241, ¶¶ 29-33 (4th Dist.).

The Sixth Circuit Court of Appeals expressly approved this analysis in affirming a district court's dismissal of a consumer's ODTPA claim:

> The district court dismissed [plaintiff's] ODTPA claim based on its determination that [plaintiff] and the other putative class members, as consumers, lacked standing to bring claims under the ODTPA. As the Ohio Supreme Court has not considered the issue, we look for guidance to the Ohio Court of Appeals. . . . In *Dawson v. Blockbuster, Inc.*, 2006 Ohio 1240, 2006 WL 1061769, at *3-4 (Ohio Ct. App. 2006), the court held that consumers do not have standing to raise ODTPA claims because (1) the ODTPA and the federal Lanham Act are "substantially similar," and (2) all federal courts of appeal to have considered the issue have held that consumers do not have standing under the Lanham Act. The Ohio Supreme Court declined to accept the appeal for review in *Dawson v. Blockbuster, Inc.*, 110 Ohio St. 3d 1442, 2006 Ohio 3862, 852 N.E.2d 190 (Ohio 2006).
>
> Although [Plaintiff] asserts various reasons why we should distinguish the ODTPA from the Lanham Act, he has failed to make the requisite strong showing that the Ohio Supreme Court would decide this issue differently. We therefore affirm the district court's decision that [plaintiff] does not have standing to raise an ODTPA claim as a consumer.

*Holbrook v. Louisiana-Pacific Corp.*, 533 Fed. App'x 493, 497-98 (6th Cir. 2013).

Second, courts have explained that conferring standing on consumers under the ODTPA would render the Ohio Consumer Sales Practices Act ("OCSPA") superfluous, because both statutes regulate the same type of conduct, but the OCSPA expressly applies to <u>consumer</u> transactions. *See Phillips*, 290 F.R.D. at 484 (explaining that the state legislature's subsequent passage of the OCSPA evidences an intent that the ODTPA not apply to consumers); *Gascho*, 863 F. Supp. 2d at 699 ("the DTPA addresses commercial injury, and not consumer injury (which is addressed by the CSPA)"); *Robins*, 838 F. Supp. 2d at 650.[6]

The Court appreciates that there is a split of authority on the issue of whether, under Ohio law, individual consumers have standing to assert a claim under the ODTPA. However, the Court agrees with the majority of courts to consider the issue and holds that individual consumers do not have standing.

First, the Court finds the reasoning set forth in, *inter alia*, *Terlesky*, *In re Porsche Cars*, and *Robins* that the ODTPA is to be interpreted consistently with the analogous Lanham Act to be well-reasoned and persuasive.

Second, and importantly, the Sixth Circuit has expressly approved this analysis and reasoning. *Holbrook*, 533 Fed. App'x at 497-98.

Third, two Ohio state appellate courts have expressly held that the ODTPA, like the Lanham Act, does not apply to consumers. *Hamilton*, 2014-Ohio-1118, ¶¶ 29-33;

---

[6] The OCSPA proscribes suppliers from committing unfair or deceptive acts in connection with consumer transactions, including, *inter alia*, that the subject of a transaction has "sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have," or that the subject of a consumer transaction "is of a particular standard, quality, grade, style, prescription, or model, if it is not[.]" *See* Ohio Rev. Code § 1345.02(B)(2)-(3).

11

*Dawson*, 2006-Ohio-1240, ¶¶ 23-25. This Court is not to disregard these decisions from Ohio's intermediate appellate courts unless it is convinced that the Supreme Court of Ohio would decide the issue differently. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). However, this Court is not convinced that the highest court of the state would decide otherwise. The Court agrees with Judge Frost that the Supreme Court of Ohio is likely to agree with the position announced in *Dawson*. *In re Porsche Cars*, 880 F. Supp. 2d at 875.

Fourth, and finally, the Court agrees that a contrary holding would render the OCSPA superfluous. *See Hamilton*, 2014-Ohio-1118, ¶ 13 ("The proper remedy for <u>consumers</u> seeking redress against unfair, deceptive, or unconscionable acts in the sale of consumer goods or services is through the CSPA") (emphasis supplied); *Phillips*, 290 F.R.D. at 484; *Robins*, 838 F. Supp. 2d at 650.

Here, Ms. Richardson, as an individual consumer, does not have standing to pursue an ODTPA claim. *See Holbrook*, 533 Fed. App'x at 497-98; *Terlesky*, 2015 U.S. Dist. LEXIS 155236, at ** 5-7; *Crawford*, 934 F. Supp. 2d at 950; *Phillips*, 290 F.R.D. at 484; *In re Porsche Cars*, 880 F. Supp. 2d at 873-74; *Robins*, 838 F. Supp. 2d at 649-650. Accordingly, Defendants' motion for summary judgment (Doc. 49) is **GRANTED** as to Count One of the Complaint.

**B. Ms. Richardson's breach of contract claim fails on the facts and the law.**

Count Two of the Complaint asserts a claim for breach of contract. (Doc. 30 at ¶¶ 84-88). Specifically, Count Two alleges that Defendants breached the terms of the Student Handbook and Antonelli Loan Agreement (the "Contracts"). (*Id.*)

The Complaint does not attach or describe any provision of the Antonelli Loan Agreement.[7] The Complaint identifies a few provisions of the Student Handbook. Specifically, the Student Handbook's mission statement provides:

> Antonelli College's Practical Nursing Program is offered by the Department of Nursing. The program prepares knowledgeable nursing graduates by providing a caring, diverse, and student-centered learning environment that nurtures critical thinking and enriches holistic healthcare across the lifespan. All activities of the nursing program are guided by the college's mission, as reflected in the specific goals, purposes and philosophy of the nursing program.

(Doc. 30 at ¶ 27). The Student Handbook also states that the PNP "prepares students for [the NCLEX-PN] required by the Ohio Board of Nursing for the licensure to practice as a Licensed Practical Nurse." (*Id.* at 28).

The Complaint alleges that Defendants breached the Contracts in two ways: first, by "not properly preparing [Ms. Richardson] for taking the tests associated with obtaining [her] licensure as an LPN" (Doc. 30 at ¶¶ 86-87) and second, by "making it impossible for [her] to obtain [her] degree[]" (*id.* at ¶ 87).

---

[7] The Court notes that Ms. Richardson testified in her deposition that she did not take out a loan with Antonelli. (Richardson Dep. at 50:8-10).

Defendants argue that Ms. Richardson's breach of contract claim is disproven by the undisputed facts and is an impermissible "educational malpractice" claim in disguise. (Doc. 49 at 7-8; Doc. 60 at 4-7). The Court agrees.

First, to the extent Ms. Richardson's breach of contract claim argues Defendants did not "properly prepar[e]" her to take the NCLEX-PN, it is an impermissible claim for "educational malpractice." A claim that educational services provided were inadequate constitutes a claim for educational malpractice. *Rockwood v. Shoen*, 145 F. Supp. 3d 718, 724 (S.D. Ohio 2015) (Frost, J.). Ohio does not recognize educational malpractice claims for public policy reasons. *Id.*; *see also Hutchings v. Vanderbilt Univ.*, 55 Fed. App'x 308, 310 (6th Cir. 2003) ("Courts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services"); *Lawrence v. Lorain Community College*, 127 Ohio App. 3d 546, 549 (9th Dist. 1998) (plaintiff's claim that school breached a contract by "providing substandard education, guidance and supervision" failed because "Ohio does not recognize educational malpractice claims for public policy reasons").

Second, to the extent the breach of contract claim argues that Defendants made it impossible for Ms. Richardson to obtain a degree, that claim fails because Ms. Richardson graduated from the PNP, sat for the NCLEX-PN exam, passed the NCLEX-PN exam, and obtained employment as a licensed practical nurse.[8] (Doc. 49-1 at ¶ 6;

---

8 To the extent Ms. Richardson's argument that Defendants prevented her from getting a degree refers to her allegations that the credits she earned at Antonelli did not transfer to an RN program, that claim fails for the reasons stated in this Court's Order granting Defendants' motion for partial judgment on the pleadings (Doc. 46).

Doc. 55-1 at ¶ 6).

Ms. Richardson's argument to the contrary lacks merit. Ms. Richardson argues that, pursuant to the Enrollment Agreement, the tuition she paid to Antonelli should have included costs for textbooks, clinical supplies, and uniforms. (Doc. 55). Ms. Richardson argues Defendants breached this provision of the Enrollment Agreement because textbooks were not delivered on time, there was a shortage of clinical supplies, scrubs were late or not ordered, and the physical conditions of the facilities were unsanitary. (Doc. 55 at 11-12).

This argument fails because <u>none of these facts are alleged in the Complaint, as the basis of a claim for breach of contract or otherwise</u>. The Complaint does not allege that Defendants failed to provide any book, supply, uniform, or sanitary facility, nor does it explain how such failure would constitute a breach of contract. [9] The law is clear that a party may not expand a claim in response to a motion for summary judgment in order to create an issue of fact. *See Pharos Capital Partners, L.P. v. Touche, L.L.P.*, 905 F. Supp. 2d 814, 831 (S.D. Ohio 2012) (Graham, J.) ("The Sixth Circuit has made clear that a party may not 'expand its claims to assert new theories' in response to a motion for summary judgment") (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)).

---

[9] While a plaintiff is not required to set out every fact in support of its claim in the complaint, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 U.S. App. LEXIS 26601, at * 14 (6th Cir. Oct. 19, 1999).

The only breaches alleged in the Complaint—that Defendants did not properly prepare Ms. Richardson for the NCLEX-PN and prevented her from obtaining a degree— fail on the law and the undisputed facts. Ms. Richardson's argument at the summary judgment stage, that Defendants also breached a contract by failing to provide books and supplies, was not pled in the Complaint and cannot be raised at this stage. *Pharos Capital Partners*, 905 F. Supp. 2d at 831.

Accordingly, Defendants' motion for summary judgment (Doc. 49) is **GRANTED** on Count Two of the Complaint, for breach of contract.

### C. Ms. Richardson's unjust enrichment claim is barred by an express contract.

Count Eight of the Complaint asserts a claim for unjust enrichment. (Doc. 30 at ¶¶ 126-129). Count Eight alleges that Ms. Richardson conferred a benefit on Defendants by paying tuition and other costs and Defendants' retention of those benefits under the circumstances alleged in the Complaint would be unjust. (*Id.*)

Defendants argue the unjust enrichment claim fails as a matter of law because Ms. Richardson's enrollment is governed by an express contract, the Enrollment Agreement. (Doc. 49 at 8-9).[10] Ms. Richardson did not respond to this argument in her response to Defendant's motion for summary judgment.

The Court agrees with Defendants. Initially, summary judgment is appropriate on this claim under binding Sixth Circuit precedent because Ms. Richardson abandoned the claim by failing to address it in her responsive brief. *See Brown v. VHS of Mich., Inc.*,

---

[10] The Enrollment Agreement is filed at Doc. 55-4.

16

545 Fed. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment").

In any event, the unjust enrichment claim fails because Ms. Richardson's enrollment in the PNP is governed by an express contract, the Enrollment Agreement. The existence of the Enrollment Agreement, which expressly provides for Ms. Richardson's payments to Antonelli in exchange for her enrollment in the PNP program, bars her claim that Defendants have been unjustly enriched by retaining those payments. *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078, 1086 (S.D. Ohio 1992) ("In Ohio, [unjust enrichment] claims cannot be brought where the subject matter of the claim[] is governed by a contract between the parties") (Kinneary, J.); *Retirement Ctrs. Of Am. v. St. Leonard Ctr.*, Case No. C-3-90-343, 1992 U.S. Dist. LEXIS 22744, at \*\* 33-34 (S.D. Ohio July 8, 1992) ("one may not recover for unjust enrichment where an express contract between the parties covers the same subject as the claim of unjust enrichment") (Rice, J.).

Accordingly, Defendants' motion for summary judgment (Doc. 49) is **GRANTED** on Count Eight of the Complaint, for unjust enrichment.

### IV. CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment on the claims of Plaintiff Kachena Richardson (Doc. 49) is **GRANTED**.

**IT IS SO ORDERED.**

Date: 3/29/2018

*Timothy S. Black*
Timothy S. Black
United States District Judge